JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT B. KAPLAN (Bar No. 76950), rbk@jmbm.com
MATTHEW S. KENEFICK (Bar No. 227298), mkenefick@jmbm.com
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone:    (415) 398-8080
Facsimile:    (415) 398-5584

Attorneys for Plaintiff CWCapital Asset Management LLC, in its capacity as special servicer on behalf of LaSalle Bank National Association, as trustee for the registered holders of the LB-UBS Commercial Mortgage Trust 2003-C1, Commercial Mortgage Pass-Through Certificates, Series 2003-C1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CWCAPITAL ASSET MANAGEMENT LLC, in its capacity as special servicer on behalf of LASALLE BANK NATIONAL ASSOCIATION, as trustee for the registered holders of the LB-UBS COMMERCIAL MORTGAGE TRUST 2003-C1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-C1,

    Plaintiff,

  v.

JAMES I. HUNTER, aka JAMES HUNTER, aka J. I. HUNTER, aka J. HUNTER; GIJSBERT VAN MAREN, aka G. V. MAREN; and JOHN MACKAY, aka J. MACKAY,

    Defendant.

CASE NO. C 07-2487 MEJ

**COMPLAINT FOR BREACH OF INDEMNITY AND GUARANTY AGREEMENT**

E-filing

 

Plaintiff CWCapital Asset Management LLC, in its capacity as special servicer on behalf of LaSalle Bank National Association, as trustee for the registered holders of the LB-UBS Commercial Mortgage Trust 2003-C1, Commercial Mortgage Pass-Through Certificates, Series 2003-C1 ("Plaintiff" or "Lender") alleges and states as follows:

**JURISDICTION AND VENUE**

1.    Lender is a trust which has elected to be treated as a real estate mortgage

- 1 -  COMPLAINT FOR BREACH OF INDEMNITY AND GUARANTY AGREEMENT

investment conduit organized and existing by virtue of the laws of the State of Illinois. LaSalle Bank National Association is a national banking association, with its designated main office located in Chicago, Illinois. Lender acts by and through its special servicer CWCapital Asset Management LLC, a Massachusetts limited liability company.

2.   Lender is informed and believes thereon alleges that defendant James I. Hunter is a resident of the State of California residing in the County of Alameda and is further informed and believes and thereon alleges that defendants Gijsbert Van Maren and John Mackay are residents of the Province of British Columbia, Canada.

3.   The matter in controversy in the above-entitled action exceeds the sum of $75,000.00. Jurisdiction is founded on 28 U.S.C. § 1332(a).

4.   Venue is proper in this district pursuant to 28 U.S.C. 1391(a) in that this judicial district is one in which a substantial part of the events or omission giving rise to the claims occurred, or a substantial part of the property that is the subject of the above-entitled action is situated or one or more of the defendants is subject to personal jurisdiction in this judicial district at the time this action is commenced.

## FIRST CLAIM FOR RELIEF

### (Breach of Indemnity and Guaranty Agreement)

5.   Lender realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 4, inclusive, as if fully set forth herein.

6.   For value received, on or about November 12, 2002, 519 HCT 2002 LLC ("Borrower") made, executed, and delivered to UBS Warburg Real Estate Investments Inc. ("Original Lender") that certain Deed of Trust Note in the original principal sum of $7,200,000 ("Note"). A true and correct copy of the Note is attached hereto as Exhibit 1.

7.   In order to secure repayment of all outstanding obligations owed by Borrower to the Original Lender pursuant to the Note, Borrower, as trustor, made, executed and delivered that certain first priority Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated November 12, 2002 ("Deed of Trust") to Chicago Title Insurance Company, as trustee, for the benefit of Original Lender, as beneficiary, pursuant to which the Original Lender

was granted a security interest in the Trust Property (as that term is defined in the Deed of Trust) which includes the real property commonly known as 519 17th Street, Oakland, California ("Real Property"). The Deed of Trust was recorded in the Official Records of the Alameda County Recorder's Office on November 13, 2002. A true and correct copy of the Deed of Trust is attached hereto as Exhibit 2.

8. Section 9(e) of the Deed of Trust provides in pertinent part:

> All security deposits of tenants, whether held in cash or any other form, **shall not be commingled** with any other funds of [Borrower] and, if cash, shall be deposited by [Borrower] at such commercial savings bank or banks as may be reasonably satisfactory to Beneficiary… Following the occurrence and during the continuance of any Event of Default, [Borrower] shall upon the Beneficiary's request, if permitted by any applicable legal requirements, turn over to Beneficiary the security deposits (and any interest theretofore earned thereon), with respect to all or any portion of the Trust Property, to be held by the Beneficiary subject the terms of the leases. (Emphasis added.)

9. In connection with the execution of the Deed of Trust, the Borrower made, executed and delivered to the Original Lender that certain Assignment of Leases and Rents dated November 12, 2002 ("Assignment of Leases"), pursuant to which the Borrower granted the Original Lender, inter alia, a continuing security interest in the Trust Property, Leases and Rents (as those terms are defined in the Assignment of Leases). The Assignment of Leases and Rents was recorded in the Official Records of the Alameda County Recorder's Office on November 13, 2002. A true and correct copy of the Assignment of Leases is attached hereto as Exhibit 3.

10. In connection with the Borrowers' execution of the Note, Deed of Trust and Assignment of Leases, defendants James I. Hunter, Gijsbert Van Maren and John Mackay (collectively, the "Indemnitors") executed and delivered to the original Lender that certain Indemnity and Guaranty Agreement ("Guaranty Agreement"), a true and correct copy of which is attached hereto as Exhibit 4 and incorporated herein by this reference as though set forth in full.

11. Section 1 of the Guaranty Agreement provides in pertinent part:

> Indemnitor hereby assumes liability as a primary obligor for, hereby unconditionally guarantees payment to [Lender] of, hereby agrees to pay, protect, defend and save [Lender] harmless from and against, and hereby indemnifies [Lender] from and against any and all liabilities, obligations, losses, damages…, costs and expenses including without

>limitation attorneys' fees, causes of action, suits, demands and judgments of any nature whatsoever... which may at any time be imposed upon, incurred by or awarded against [Lender] as a result of: (h) all tenant security deposits or other refundable deposits paid to or held by Borrower or any other person or entity in connection with the Leases... which are not applied in accordance with the terms of the applicable Leases....

12.     The Note, Deed of Trust, Assignment of Leases, Guaranty Agreement and all other documents executed by Borrower in favor of the Original Lender are hereinafter collectively referred to as the "Secured Loan Documents." The Secured Loan Documents were subsequently assigned by the Original Lender to the Lender pursuant to that certain Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing which was recorded in the Official Records of the Alameda County Recorder's Office on January 13, 2004 ("Assignment of Deed of Trust") and pursuant to that certain Assignment of Assignment of Leases and Rents which was recorded in the Official Records of the Alameda County Recorder's Office on January 13, 2004 ("Assignment of Assignment of Leases and Rents"). True and correct copies of the Assignment of Deed of Trust and Assignment of Assignment of Leases and Rents are attached hereto collectively as <u>Exhibit 5</u>.

13.     An Event of Default occurred under the Secured Loan Documents (as that term is defined therein) because of, <u>inter alia</u>, the failure of the Borrower to pay to the Lender on August 11, 2006 and on the eleventh day of each and every month thereafter the monthly payment of principal and interest of $43,167.64, plus the monthly payment required to be paid by the Borrower to the Lender for deposit into the Tax and Insurance Escrow Fund, Replacement Escrow Fund and Rollover Escrow Fund (as those terms are defined in the Deed of Trust), plus monthly late charges due under the Secured Loan Documents.

14.     As a result of the occurrence of an Event of Default under the Secured Loan Documents, on February 14, 2007, the Lender accelerated all outstanding obligations owed by the Borrower to Lender under the Secured Loan Documents and demanded repayment thereof, including, but not limited to, all unpaid principal, interest, interest at the Default Rate (as that term is defined in the Note), late charges, the Proportionate Yield Maintenance Premium (as that term is defined in the Deed of Trust), attorneys' fees and costs and foreclosure fees and costs.

15. There now remains due, owing and payable to Lender pursuant to the Secured Loan Documents the principal sum of $6,880,777.55, plus interest, plus interest at the Default Rate, plus the Proportionate Yield Maintenance Premium, plus late charges, plus attorneys' fees and costs and foreclosure fees and costs, and all additional amounts due and owing by the Borrower to Lender pursuant to the Secured Loan Documents.

16. To date, the Borrower has wholly failed, refused and neglected to pay the foregoing outstanding amounts owed to Lender.

17. On March 1, 2007, the Lender filed its Verified Complaint for Judicial Foreclosure, Specific Performance, Appointment of Receiver in the action entitled <u>LaSalle Bank National Association, etc. v. 519 HCT 2002 LLC, etc., et al.</u>, Alameda County Superior Court Case No. RG07-313567 ("Alameda Action"). Thereafter, on March 2, 2007, an Order Appointing Receiver Ex Parte, Temporary Retraining Order in Aid of Receiver; and Order to Show Cause Re Confirmation of Appointment of a Receiver and Preliminary Injunction in Aid of Receiver was filed in the Alameda Action (the "Receivership Order"), appointing a receiver over the Real Property ("Receiver"). The Receivership Order provided, <u>inter alia</u>, that the Receiver was authorized to "care for, protect, preserve, secure and maintain the Trust Property." The Trust Property, as defined in the Deed of Trust, includes, without limitation, security deposits previously paid by tenants of the Real Property to the Borrower.

18. On April 4, 2007, an order was entered in the Alameda Action confirming the appointment of the Receiver.

19. On March 20, 2007, the Lender demanded, in writing, that the Borrower pay to the Receiver all security deposits from current tenants in the real property which had previously been paid to the Borrower (the "Security Deposits"). Pursuant to the Deed of Trust and Assignment of Leases, the Lender holds a security interest in the Security Deposits and section 9(e) of the Deed of Trust requires that all Security Deposits paid by tenants to the Borrower not be commingled with any other funds of the Borrower. The Lender is informed, believes and thereon alleges that the amount of the Security Deposits is at least $106,056.52. Notwithstanding the foregoing, the Borrower wholly failed, refused and neglected to pay to the Receiver the Security Deposits in the

1  sum of $106,056.52, or any other sum.

2      20.    On May 4, 2007, the Lender demanded in writing that the Indemnitors pay to the Lender the amount of the unpaid Security Deposits of $106,056.52 pursuant to section 1(h) of the Guaranty Agreement. The Indemnitors failed, refused and neglected to pay said sum or another sum to the Lender.

    21.    As a result thereof, the Indemnitors are indebted to the Lender pursuant to the Guaranty Agreement in the sum of $106,056.52, plus additional amounts according to proof to be presented at the time of trial or entry of judgment, plus interest thereon at the legal rate according to proof to be presented at the time of trial or entry of judgment.

    22.    Pursuant to terms of the Guaranty Agreement, the Indemnitors agreed that in the event it was necessary for the Lender to retain the services of an attorney to enforce any portion thereof, the Indemnitors agreed to pay to the Lender all costs and expenses including, without limitation, attorneys' fees incurred by the Lender as a result thereof and not the sum of not less than $25,000.00 is a reasonable attorneys' fee to be awarded to Lender for the fees of its attorneys herein.

    23.    The Lender and Original Lender have duly performed all conditions precedent required to be performed pursuant to the Secured Loan Documents.

### PRAYER

WHEREFORE, Lender prays for judgment against the Indemnitors, and each of the, as follows:

    1.    For the sum of $106,056.52, plus additional amounts according to proof to be presented at the time of trial or at entry of judgment plus interest at the legal rate thereon according to proof to be presented at the time of trial or entry of judgment;

    2.    For an award of reasonable attorneys' fees;

///
///
///
///
///

3.     For costs of suit incurred; and

4.     For such other and further relief as the Court deems just and proper.

DATED: May ___, 2007

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT B. KAPLAN
MATTHEW S. KENEFICK

By: _____
ROBERT B. KAPLAN
Attorneys for Plaintiff CWCapital Asset Management LLC, in its capacity as special servicer on behalf of LaSalle Bank National Association, as trustee for the registered holders of the LB-UBS Commercial Mortgage Trust 2003-C1, Commercial Mortgage Pass-Through Certificates, Series 2003-C1