# EXHIBIT 2

Chicago Title Company

WHEN RECORDED MAIL TO:

Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue
Los Angeles, Ca. 90071
Att: Mark S. Pecheck Esq.
Ref: 93485.00030

2002519610 11/13/2002 08:30 AM
OFFICIAL RECORDS OF  RECORDING FEE: 203.00
ALAMEDA COUNTY
PATRICK O'CONNELL

61 PGS

THIS SPACE FOR RECORDER'S USE ONLY

Deed of Trust, Assignment of Leases and Rents,
Security Agreement and Fixture Filing

EXHIBIT 2    A  91227-KO

**519 HCT 2002 LLC**
(Trustor)

to

**CHICAGO TITLE INSURANCE COMPANY**

(Trustee)

for the benefit of

**UBS WARBURG REAL ESTATE INVESTMENTS INC.**

(Beneficiary)

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

Dated as of November 12, 2002

Property Location:  519 Seventeenth Street
Oakland, CA

WHEN RECORDED, RETURN TO:
Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue
Los Angeles, California 90071
Attention:  Mark S. Pecheck, Esq.
Reference:  93485.00030

LA_10639946_4

# TABLE OF CONTENTS

Page

1. Payment of Debt; Incorporation of Covenants, Conditions and Agreements.............. 4

2. Insurance ............................................................................................................ 4

3. Casualty/Application of Insurance Proceeds ................................................ 6

4. Payment of Taxes, Etc ................................................................................... 8

5. Tax and Insurance Escrow Fund...................................................................... 9

6. Replacement Escrow Fund; Deferred Maintenance Escrow Fund; Rollover Escrow
   Fund .................................................................................................... 9

7. General Provisions Applicable to Escrow Funds........................................... 12

8. Condemnation................................................................................................. 12

9. Leases and Rents............................................................................................. 13

10. Representations, Warranties and Covenants Concerning Loan..................... 16

11. Single Purpose Entity/Separateness ............................................................. 22

12. Maintenance of Trust Property ..................................................................... 23

13. Transfer or Encumbrance of the Trust Property ........................................... 23

14. Estoppel Certificates and No Default Affidavits .......................................... 27

15. Changes in Laws Regarding Taxation .......................................................... 27

16. No Credits on Account of the Debt................................................................ 28

17. Financial Statements ..................................................................................... 28

18. Further Acts, Etc ........................................................................................... 29

19. Recording of Deed of Trust, Etc................................................................... 29

20. Events of Default ........................................................................................... 30

21. Late Payment Charge ..................................................................................... 31

22. Right To Cure Defaults.................................................................................. 31

1

23. Remedies ................................................................. 32

24. Right of Entry ......................................................... 35

25. Security Agreement .................................................. 35

26. Actions and Proceedings ......................................... 36

27. Contest of Certain Claims ....................................... 36

28. Marshalling and Other Matters ................................ 37

29. Hazardous Substances ............................................. 37

30. Asbestos ................................................................. 38

31. Environmental Monitoring ....................................... 38

32. Handicapped Access ................................................ 39

33. Indemnification ...................................................... 40

34. Notices ................................................................... 41

35. Non-Waiver ............................................................ 42

36. No Oral Change ...................................................... 42

37. Liability .................................................................. 42

38. Inapplicable Provisions ........................................... 42

39. Headings, Etc. ......................................................... 42

40. Duplicate Originals .................................................. 42

41. Definitions .............................................................. 42

42. Homestead .............................................................. 43

43. Assignments ........................................................... 43

44. Waiver of Jury Trial ................................................ 43

45. Miscellaneous ......................................................... 43

46. Limitation on Trustor's Liability ............................... 45

47. Defeasance ............................................................. 45

2

48. Yield Maintenance ................................................................................................ 47

49. Cash Management Agreement ............................................................................... 48

50. Annual Budgets ..................................................................................................... 48

51. Sale of Notes and Securitization ........................................................................... 49

52. Intentionally omitted ............................................................................................ 50

53. Intentionally omitted ............................................................................................ 50

54. Servicer ................................................................................................................ 50

55. Management of the Trust Property ........................................................................ 50

56. Concerning the Trustee ......................................................................................... 50

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Deed of Trust"), made as of November 12, 2002, by 519 HCT 2002 LLC, a California limited liability company, having its principal place of business at 1411 Harbor Bay Parkway, #1000, Alameda, CA, 94502, ("Trustor"), to CHICAGO TITLE INSURANCE COMPANY, having an address at One Kaiser Plaza, Suite 745, Oakland, California 94612 (Escrow No. 000912271) ("Trustee"), for the benefit of UBS WARBURG REAL ESTATE INVESTMENTS INC., a Delaware corporation, having its principal place of business at 1285 Avenue of the Americas, 11th Floor, New York, New York 10019 ("Beneficiary").

## WITNESSETH:

To secure the payment of an indebtedness in the original principal sum of SEVEN MILLION TWO HUNDRED THOUSAND no/100 Dollars ($7,200,000.00) (the "Loan"), lawful money of the United States of America, to be paid with interest according to a certain deed of trust note of even date herewith made by Trustor to Beneficiary (the deed of trust note together with all consolidations, extensions, renewals or modifications thereof being hereinafter collectively called the "Note") and all other sums due hereunder, under the other Loan Documents (hereinafter defined) and under the Note (said indebtedness and interest due under the Note and all other sums due hereunder, under the Note and under the other Loan Documents being hereinafter collectively referred to as the "Debt"), Trustor has deeded, mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned, and hypothecated and by these presents does hereby deed, mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Trustee, IN TRUST WITH POWER OF SALE, the real property described in Exhibit A attached hereto (the "Premises") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "Improvements");

TOGETHER WITH: all right, title, interest and estate of Trustor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the "Trust Property"):

(a)     all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Trustor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

LA_10639946_4

(b)    all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Premises and/or the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and/or the Improvements, and all building equipment, materials and supplies of any nature whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "Equipment"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Trustor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Trust Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Deed of Trust;

(c)    all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and/or the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and/or Improvements;

(d)    all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "Leases") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Trustor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "Rents"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)    all proceeds of and any unearned premiums on any insurance policies covering the Trust Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property;

(f)    the right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Trust Property and to commence any action or proceeding to protect the interest of Beneficiary in the Trust Property;

(g)    all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Trust Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Trust Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Trust Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "Intangibles"); and

(h)    all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

TO HAVE AND TO HOLD the above granted and described Trust Property unto Trustee and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Trustor shall pay to Beneficiary the Debt at the time and in the manner provided in the Note and this Deed of Trust and shall abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents (hereinafter defined) in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Beneficiary as follows:

3

PART I

GENERAL PROVISIONS

1.    Payment of Debt; Incorporation of Covenants, Conditions and Agreements. Trustor shall pay the Debt at the time and in the manner provided in the Note and in this Deed of Trust and the other Loan Documents. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents including, without limitation, the Note, that certain Cash Management Agreement of even date herewith by and between Trustor and Beneficiary (the "Cash Management Agreement") and this Deed of Trust now or hereafter executed by Trustor and/or others and by or in favor of Beneficiary, which evidences, secures or guarantees all or any portion of the Debt or otherwise is executed and/or delivered in connection with the Note and this Deed of Trust (collectively, the "Loan Documents") are hereby made a part of this Deed of Trust to the same extent and with the same force as if fully set forth herein.

2.    Insurance.

(a)    Trustor, at its sole cost and expense, shall obtain and maintain during the entire term of this Deed of Trust (the "Term") the following policies of insurance:

(i)    Casualty insurance against loss or damage by fire, lightning and such other perils as are included in a standard "special form" policy (formerly known as an "all-risk" endorsement policy), and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy including, without limitation, riot and civil commotion, terrorist actions, vandalism, malicious mischief, burglary and theft in an amount equal to the greatest of (A) the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, (B) the outstanding principal balance of the Loan, and (C) such amount that the insurer would not deem Trustor a co-insurer under said policies. The policies of insurance required under this Paragraph 2(a)(i) shall contain a "Replacement Cost" endorsement with a waiver of depreciation and an "Agreed Amount" or "No Coinsurance" endorsement and shall have a deductible no greater than the lesser of $10,000 and the amount equal to 5% of annual Net Operating Income (as defined in the Cash Management Agreement) for the preceding twelve (12) full calendar months calculated at the time such insurance is obtained or renewed.

(ii)    Commercial General Liability insurance, including a broad form comprehensive general liability endorsement and coverages for broad form property damage, contractual damages and personal injuries (including death resulting therefrom) and containing minimum limits per occurrence of $1,000,000.00 and $2,000,000.00 in the aggregate for any policy year. In addition, at least $ 5,000,000.00 excess and/or umbrella liability insurance shall be obtained and maintained for any and all claims, including all legal liability imposed upon Trustor and all court costs and attorneys' fees incurred in connection with the ownership, operation and maintenance of the Trust Property.

4

(iii)    Rental loss and/or business interruption insurance in an amount equal to the greater of (A) estimated gross revenues from the operations of the Trust Property for a period of twelve (12) months or (B) the projected operating expenses (including debt service) for the maintenance and operation of the Trust Property for a period of twelve (12) months). The amount of such rental loss and/or business interruption insurance shall be increased from time to time during the Term as and when new Leases and renewal Leases are entered into and the Rents increase or the estimate of (or the actual) operating expenses for the Trust Property, as may be applicable, increases.

(iv)    Insurance against loss or damage from (A) leakage of sprinkler systems and (B) explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements (without exclusion for explosions), in an amount at least equal to the outstanding principal amount of the Note or $2,000,000.00, whichever is less.

(v)    If Trustor has employees, worker's compensation insurance with respect to any employees of Trustor, as required by any governmental authority or legal requirement.

(vi)    Flood insurance if any part of the Trust Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards in an amount at least equal to the outstanding principal amount of the Loan or such lesser amount as agreed to by Beneficiary in writing.

(vii)    During any period of repair or restoration, builder's "all risk" insurance in an amount equal to not less than the full insurable value of the Trust Property against such risks (including, without limitation, fire and extended coverage and collapse of the Improvements to agreed limits) as Beneficiary may request, in form and substance acceptable to Beneficiary.

(viii)    If the Trust Property is or ever becomes non-conforming with respect to zoning, ordinance or law coverage to compensate for loss of value or property resulting from operation of law and the cost of demolition and the increased cost of construction, in amounts as requested by Beneficiary.

All policies of insurance (the "Policies") required pursuant to this Paragraph 2: (i) shall be issued by companies licensed to do business in the state where the Trust Property is located, with a financial strength and claims paying ability rating of at least A:X from A.M. Best Company and "A" or better by Standard & Poor's Ratings Services, a division of the McGraw-Hill Companies, Inc.; (ii) shall, with respect to all property insurance policies, name Beneficiary and its successors and/or assigns as their interest may appear as the mortgagee; (iii) shall, with respect to all property insurance policies and rental loss and/or business interruption insurance policies, contain a Standard Mortgagee Clause and a Mortgagee's Loss Payable Endorsement, or their equivalents, naming Beneficiary as the person to which all payments made by such insurance company shall be paid; (iv) shall, with respect to all liability policies, name Beneficiary and its successors and/or assigns as an additional insured; (v) shall contain a waiver of subrogation against Beneficiary; (vi) shall contain such provisions as Beneficiary deems

reasonably necessary or desirable to protect its interest including, without limitation, endorsements providing that neither Trustor, Beneficiary nor any other party shall be a co-insurer under said Policies and that Beneficiary shall receive at least thirty (30) days prior written notice of any modification, reduction or cancellation; and (vii) shall be satisfactory in form and substance to Beneficiary and shall be approved by Beneficiary as to amounts, form, risk coverage, deductibles, loss payees and insureds. Certified copies of the Policies shall be delivered to Beneficiary, c/o UBS Warburg Real Estate Investments Inc., 1285 Avenue of the Americas, 11th Floor, New York, New York 10019, Attn: Robert Pettinato, Director, within 30 days after the effective date thereof. Trustor shall pay to Beneficiary the cost of Beneficiary's review of the Policies and any certificates and renewals relating thereto. Trustor shall pay the premiums for such Policies (the "Insurance Premiums") annually in advance as the same become due and payable and shall furnish to Beneficiary evidence of the renewal of each of the Policies with receipts for the payment of the Insurance Premiums or other evidence of such payment reasonably satisfactory to Beneficiary (provided, however, that Trustor shall not be required to furnish such evidence of payment to Beneficiary in the event that such Insurance Premiums have been paid by Beneficiary pursuant to Paragraph 5 hereof). In addition to the insurance coverages described in Paragraph 2(a) above, Trustor shall obtain such other insurance as may from time to time be reasonably required by Beneficiary in order to protect its interests. Within thirty (30) days after request by Beneficiary, Trustor shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by Beneficiary, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.

3.     <u>Casualty/Application of Insurance Proceeds</u>.

(a)     If the Trust Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (an "Insured Casualty"), Trustor shall give prompt notice thereof to Beneficiary. Following the occurrence of an Insured Casualty, Trustor, regardless of whether Insurance Proceeds (hereinafter defined) are available, shall promptly proceed to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law. The expenses incurred by Beneficiary in the adjustment and collection of insurance proceeds shall become part of the Debt and be secured hereby and shall be reimbursed by Trustor to Beneficiary upon demand.

(b)     In the event of an Insured Casualty where the damage to the Trust Property does not exceed the lesser of (x) $250,000 and (y) ten percent (10%) of the outstanding principal balance of the Note, Trustor may settle and adjust any claim without the consent of Beneficiary and agree with the insurance company or companies on the amount to be paid upon the loss (the "Insurance Proceeds"); provided that such adjustment is carried out in a competent and timely manner. In such case, provided that no Event of Default (as hereinafter defined) shall have occurred and that the restoration or repair of the Trust Property can be completed prior to the earlier to occur of (i) the date which is six (6) months following such Insured Casualty, and (ii) the date which is twelve (12) months prior to the Maturity Date (as defined in the Note), Trustor is hereby authorized to collect and receipt for any such Insurance Proceeds. In the event of an Insured Casualty where the damage to the Trust Property equals or exceeds the lesser of (x) $250,000 and (y) 10% of the outstanding principal balance of the Note (a "Significant

6

Casualty"), then Beneficiary may settle and adjust any claim without the consent of Trustor and agree with the insurance company or companies on the amount of the Insurance Proceeds and any Insurance Proceeds shall be due and payable solely to Beneficiary and held by Beneficiary in accordance with the terms of this Deed of Trust. In the event Trustor or any party other than Beneficiary is a payee on any check representing Insurance Proceeds with respect to a Significant Casualty, Trustor shall immediately endorse, and cause all such third parties to endorse, such check payable to the order of Beneficiary. Trustor hereby irrevocably appoints Beneficiary as its attorney-in-fact, coupled with an interest, to endorse any such check payable to the order of Beneficiary. The expenses incurred by Beneficiary in the adjustment and collection of Insurance Proceeds shall become part of the Debt and be secured hereby and shall be reimbursed by Trustor to Beneficiary upon demand.

(c)    In the event of loss or damages covered by any of the Policies, the following provisions shall apply with respect to application of Insurance Proceeds:

(i)    In the event of an Insured Casualty where the loss is in an aggregate amount less than twenty-five percent (25%) of the original principal balance of the Note and if, in the reasonable judgment of Beneficiary, the Trust Property can be restored prior to the earlier to occur of (A) the date which is six (6) months following such Insured Casualty and (B) the date which is twelve (12) months prior to the Maturity Date, and after such restoration will adequately secure the outstanding balance of the Debt and will have a value at least equal to the value immediately prior to such Insured Casualty, then, if no Event of Default (as hereinafter defined) shall have occurred, the Insurance Proceeds (after reimbursement of any expenses incurred by Beneficiary) shall be applied to reimburse Trustor for the cost of restoring, repairing, replacing or rebuilding the Trust Property or part thereof subject to the Insured Casualty, in the manner set forth below. Trustor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Trustor shall pay all costs (and if required by Beneficiary, Trustor shall deposit the total thereof with Beneficiary in advance) of such restoring, repairing, replacing or rebuilding in excess of the net Insurance Proceeds made available pursuant to the terms hereof.

(ii)    Except as provided in Paragraph 3(c)(i) above, the Insurance Proceeds collected upon any Insured Casualty shall, at the option of Beneficiary in its sole discretion, be applied to the payment of the Debt or applied to reimburse Trustor for the cost of restoring, repairing, replacing or rebuilding the Trust Property or part thereof subject to the Insured Casualty, in the manner set forth below. If Beneficiary elects to apply any proceeds of insurance to the payment of the Debt prior to the final sale of the Loan in a Secondary Market Transaction (as hereinafter defined), Trustor shall immediately upon demand reimburse Beneficiary for any and all Hedge Losses (as hereinafter defined) resulting, either directly or indirectly, from that portion of the Debt so paid. Additionally, throughout the term of the Loan if an Event of Default, or an event which with notice and/or the passage of time or both would constitute an Event of Default, has occurred then the Trustor shall pay to Beneficiary, with respect to any payment of the Debt pursuant to this paragraph, an additional amount equal to the Proportionate Yield Maintenance Premium (as defined in Paragraph 48 below); provided, however, that if an Event of Default, or an event which with notice and/or the passage of

7

time or both would constitute an Event of Default, has not occurred, then the Proportionate Yield Maintenance Premium shall not be payable. Any such application to the Debt shall (A) be applied to those payments of principal and interest last due under the Note but shall not postpone any payments otherwise required pursuant to the Note other than such last due payments and (B) not cause or result in the Monthly Debt Service Payment Amount under the Note being re-cast based upon the reduction in the principal balance of the Loan and the number of months remaining until the Maturity Date (as defined in the Note). For purposes hereof, "Hedge Losses" shall mean all actual losses incurred by Beneficiary in connection with the hedge positions taken by Beneficiary in order to fix the Initial Interest Rate (as defined in the Note) on the Loan. Trustor acknowledges that in order for Beneficiary to fix the Initial Interest Rate on the Loan, Beneficiary entered into hedging transactions by selling U.S. Treasury securities, which hedging transactions would have to be "unwound" if all or any portion of the Loan is paid down.

(iii)     In the event Trustor is entitled to reimbursement out of Insurance Proceeds held by Beneficiary, such Insurance Proceeds shall be disbursed from time to time upon Beneficiary being furnished with (1) evidence satisfactory to Beneficiary of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (2) funds or, at Beneficiary's option, assurances satisfactory to Beneficiary that such funds are available, sufficient in addition to the Insurance Proceeds to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Beneficiary may reasonably require and approve. Beneficiary may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Beneficiary prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than Insurance Proceeds shall be disbursed prior to disbursement of such Insurance Proceeds; and at all times, the undisbursed balance of such proceeds remaining in the hands of Beneficiary, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Beneficiary by or on behalf of Trustor for that purpose, shall be at least sufficient in the reasonable judgment of Beneficiary to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of Insurance Proceeds held by Beneficiary after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto.

4.     Payment of Taxes, Etc. Trustor shall pay all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Trust Property or any part thereof (collectively, the "Taxes") and all water rates, sewer rents, ground rents, maintenance charges, and other impositions and charges now or hereafter levied or assessed or imposed against the Trust Property or any part thereof (collectively, the "Other Charges") as the same become due and payable. Trustor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

Trustor shall furnish to Beneficiary receipts for the payment of the Taxes and the Other Charges prior to the date the same shall become delinquent (provided, however, that Trustor shall not be required to furnish such receipts for payment of Taxes in the event that such Taxes have been paid by Beneficiary pursuant to Paragraph 5 hereof).

5.    Tax and Insurance Escrow Fund.  Simultaneously with the execution hereof, Trustor shall deposit with Beneficiary the amount, as determined by Beneficiary, which, when added to the monthly payments subsequently required to be deposited with Beneficiary hereunder on account of Taxes and Insurance Premiums, will result in there being on deposit with Beneficiary an amount sufficient to pay the next due installment of Taxes on the Trust Property at least thirty (30) days prior to the due date thereof and the next due annual Insurance Premiums with respect to the Trust Property at least thirty (30) days prior to the due date thereof. In addition, Trustor shall pay to Beneficiary on each Payment Date (as defined in the Note) (a) one-twelfth of the Taxes that Beneficiary estimates will be payable during the next ensuing twelve (12) months in order to accumulate with Beneficiary sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (b) one-twelfth of the Insurance Premiums that Beneficiary estimates will be payable for the renewal of the coverage afforded by the Policies upon the expiration thereof in order to accumulate with Beneficiary sufficient funds to pay all such Insurance Premiums at least thirty (30) days prior to the expiration of the Policies (said initial deposit, together with the amounts in clauses (a) and (b) above, being hereinafter called the "Tax and Insurance Escrow Fund").  Beneficiary will apply the Tax and Insurance Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Trustor pursuant to Paragraphs 2 and 4 hereof.  In making any payment relating to the Tax and Insurance Escrow Fund, Beneficiary may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or insurer or agent (with respect to Insurance Premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof.  If at any time Beneficiary determines that the Tax and Insurance Escrow Fund is not or will not be sufficient to pay the items set forth in clauses (a) and (b) above, Beneficiary shall notify Trustor of such determination and Trustor shall increase its monthly payments to Beneficiary by the amount that Beneficiary estimates is sufficient to make up the deficiency at least thirty (30) days prior to delinquency of the Taxes and/or expiration of the Policies, as the case may be.  If the amount of the Tax and Insurance Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Paragraphs 2 and 4 hereof, Beneficiary shall credit such excess against future payments to be made to the Tax and Insurance Escrow Fund, and all excess amounts remaining when the Debt has been satisfied shall be returned to Trustor.

6.    Replacement Escrow Fund; Deferred Maintenance Escrow Fund; and Rollover Escrow Fund.

(a)    Trustor shall pay to Beneficiary on each Payment Date an amount equal to one-twelfth of the Annual Replacement Amount (as defined below) and such payments shall be held in escrow (the "Replacement Escrow Fund") and disbursed in accordance with the following provisions of this Paragraph 6(a).  The "Annual Replacement Amount", which is based on Beneficiary's initial estimate of the annual amount for replacements and repairs of a capital nature required to be made to the Trust Property, shall initially be $10,734.00.  Beneficiary may reassess the Annual Replacement Amount from time to time in its reasonable discretion (based

9

upon its then current underwriting standards) and, upon notice to Trustor, Trustor shall be required to deposit such reassessed Replacement Amount. Provided that no Event of Default shall have occurred, Beneficiary shall make disbursements from the Replacement Escrow Fund as requested by Trustor, and approved by Beneficiary in its reasonable discretion, on a monthly basis in increments of no less than $1,000.00 upon delivery by Trustor of a draw request accompanied by (i) copies of paid invoices (or with respect to requests in excess of $10,000.00, unpaid invoices) for the amounts requested, (ii) a brief description of the repair or replacement (including evidence that same is of a capital nature) and, if required by Beneficiary, (iii) lien waivers and releases from all parties furnishing materials and/or services in connection with the requested payment. Any disbursement by Beneficiary hereunder for a capital item in excess of $10,000.00 and not already paid for by Trustor, shall be made by joint check, payable to Trustor and the applicable contractor, supplier, materialman, mechanic, subcontractor or other party to whom payment is due in connection with such capital item. Beneficiary may require an inspection of the Trust Property at Trustor's expense, or other evidence as Beneficiary may in its reasonable discretion require, prior to making a monthly disbursement in order to verify compliance with the requirements of this Paragraph 6(a).

(b)     On the date hereof, Trustor shall deposit with Beneficiary the sum of $49,375.00 to be held in escrow (the "Deferred Maintenance Escrow Fund") and disbursed in accordance with this Paragraph 6(b) for the repair and remediation of those deferred maintenance items at the Trust Property set forth on Exhibit B annexed hereto (the "Deferred Maintenance Items"). Trustor shall undertake and complete all of the work set forth on Exhibit B no later than the date set forth opposite such Deferred Maintenance Item. Provided that no Event of Default shall have occurred, Beneficiary shall make disbursements from the Deferred Maintenance Escrow Fund as requested by Trustor, and approved by Beneficiary in its reasonable discretion, in increments of no less than $1,000.00 upon delivery by Trustor of a draw request accompanied by (i) copies of paid invoices (or with respect to requests in excess of $10,000.00, unpaid invoices) for the amounts requested, (ii) a certification for disbursement from Trustor stating (a) a brief description of the repair, (b) that the repair has been completed in a good and workmanlike manner and in compliance with all applicable laws, and (c) if required by Beneficiary, lien waivers and releases from all parties furnishing materials and/or services in connection with the requested payment. Any disbursement by Beneficiary hereunder in excess of $10,000.00 and not already paid for by Trustor, shall be made by joint check, payable to Trustor and the applicable contractor, supplier, materialman, mechanic, subcontractor or other party to whom payment is due in connection with such disbursement. Beneficiary may require an inspection of the Trust Property at Trustor's expense, or other evidence as Beneficiary may in its reasonable discretion require, prior to making a disbursement in order to verify completion of repairs for which reimbursement is sought. After full completion of all of the Deferred Maintenance Items in accordance with the terms of this Paragraph 6(c) and the payment of all costs in connection therewith, Beneficiary shall release any remaining Deferred Maintenance Escrow Funds to Trustor.

(c)     (A) Trustor shall pay to Beneficiary on each Payment Date one-twelfth of $67,088.00, which shall be deposited with and held by Beneficiary for tenant improvement and leasing commission obligations incurred following the date hereof (the "Rollover Escrow Fund"). In addition, Trustor shall pay to Beneficiary for deposit in the Rollover Escrow Fund all funds received by Trustor from tenants in connection with the

10

cancellation of any Leases, including, but not limited to, any cancellation fees, penalties, and payments relating to unamortized tenant improvements and leasing commissions. Beneficiary may from time to time reassess its estimate of the monthly amount necessary to be deposited into the Rollover Escrow Fund and, upon notice to Trustor, Trustor shall be required to deposit into the Rollover Escrow Fund each month such reassessed amount. Beneficiary shall make disbursements from the Rollover Escrow Fund for expenses reasonably incurred by Trustor for new Leases entered into by Trustor in accordance with the provisions of Paragraph 9 below. All such expenses shall be approved by Beneficiary in its sole discretion. Provided that no Event of Default shall exist and remain uncured, Beneficiary shall make disbursements as requested, in writing, by Trustor on a monthly basis in increments of no less than $1,000.00 upon delivery by Trustor of copies of paid invoices (or with respect to any request in excess of $10,000, unpaid invoices) for the amounts requested for tenant improvements and leasing commissions, the newly executed Lease, extension, renewal, or modification, with terms commensurate with the expired Lease, a certification for tenant improvement disbursements from the Trustor stating (a) the nature and type of the related improvement, (b) that the related improvement has been completed in a good and workmanlike manner and (c) that the related improvement has been paid in full (or, with respect to any request in excess of $10,000, will be paid for in full from the requested disbursement) or a certification for leasing commission disbursements stating that such leasing commission has been paid in full (or, with respect to requests in excess of $10,000, will be paid for in full from the requested disbursement) and, if required by Beneficiary, lien waivers and releases from all parties furnishing materials and/or services in connection with the requested payment. Any disbursement by Beneficiary hereunder in excess of $10,000 and not already paid for by Trustor, shall be made by joint check, payable to Trustor and the applicable contractor, supplier, materialman, mechanic, subcontractor, broker or other party to whom payment is due in connection with such disbursement. Beneficiary may require an inspection of the Trust Property at Trustor's expense prior to making a disbursement in order to verify completion of improvements for which reimbursement is sought.

(B)     Trustor, as landlord, and Metromedia Fiber Network Services ("MFN"), as tenant, are parties to a lease (the "MFN Lease") for occupancy of space in the Premises. MFN has recently filed for bankruptcy protection, and MFN's bankruptcy trustee has not yet accepted or rejected the MFN Lease in accordance with the trustee's rights under applicable bankruptcy law. Trustor acknowledges and agrees that Beneficiary will disburse a portion of the Loan equal to three hundred seventy-five thousand and no/100 dollars ($375,000.00) into the Rollover Escrow Fund (such portion of the Rollover Escrow Fund referred to hereinafter as the "MFN Rollover Escrow"). Beneficiary shall disburse the MFN Rollover Escrow only upon the satisfaction of each of the following conditions: (i) MFN's bankruptcy trustee accepts the MFN Lease or (ii) (1) Trustor enters into a new lease (or leases) for space (other than the space currently subject to the MFN Lease) not currently occupied by tenants of the Premises and/or Trustor enters into a new lease (or leases) for the space currently subject to the MFN Lease),(2) annual base rent under such new lease(s) is equal to or greater than twenty-two thousand seven hundred and no/100 dollars ($22,700), and (3) tenants under such new leases have accepted the leased premises and acknowledged its (their) obligation(s) to commence paying rent, in each case as evidenced by its (their) execution of a rent commencement letter or estoppel certificate in form and substance acceptable to Beneficiary and (iii) the Debt Service Coverage Ratio (as defined in the Cash Management Agreement) is no less than 1.25. For __purposes _of _calculating __the __Debt __Service

Coverage Ratio under clause (iii) of this paragraph, determination of Net Operating Income (as defined in the Cash Management Agreement) will be based on Operating Expenses (as defined in the Cash Management Agreement) for the twelve full calendar months preceding calculation of the Debt Service Coverage Ratio and on annualized Gross Income from Operations (as defined in the Cash Management Agreement) based on the then current rent roll that includes rent received only from those tenants currently occupying and actually paying unabated rent.

(C)    If any part of the MFN Rollover Escrow is not disbursed in accordance with this Section before the date that is one year days after the date hereof, then Trustor authorizes Beneficiary to hold such funds as additional cash collateral securing Trustor's repayment of the sums due under the Note until such time as the sums payable under the Note are paid in full. All interest on the MFN Rollover Escrow (if any) shall accrue for the benefit of Borrower and shall be disbursed to Borrower at such times as Holder reasonably determines.

7.    General Provisions Applicable to Escrow Funds. Notwithstanding anything set forth herein to the contrary, no earnings or interest on the Replacement Escrow Fund, the Deferred Maintenance Escrow Fund, the Rollover Escrow Fund, and the Tax and Insurance Escrow Fund (collectively, the "Escrow Funds") shall be payable to Trustor. Trustor hereby pledges to Beneficiary and grants to Beneficiary a first priority perfected security interest in any and all monies now or hereafter deposited in the Escrow Funds as additional security for the payment of the Debt. Upon the occurrence of an Event of Default, Beneficiary may apply any sums then present in the Escrow Funds to the payment of the Debt in any order in its sole discretion. The Escrow Funds shall not constitute a trust fund and may be commingled with other monies held by Beneficiary.

8.    Condemnation.

(a)    Trustor shall promptly give Beneficiary written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding with respect to all or any portion of the Trust Property (a "Condemnation") and shall deliver to Beneficiary copies of any and all papers served in connection with such Condemnation. Following the occurrence of a Condemnation, Trustor, regardless of whether an Award (hereinafter defined) is available, shall promptly proceed to restore, repair, replace or rebuild the same to the extent practicable to be of at least equal value and of substantially the same character as prior to such Condemnation, all to be effected in accordance with applicable law.

(b)    Any and all awards or payments ("Award") for any taking accomplished through a Condemnation (a "Taking") are hereby assigned by Trustor to Beneficiary and Beneficiary is hereby authorized to make any compromise or settlement in connection with such Condemnation, subject to the provisions of this Deed of Trust.

(c)    In the event of any Condemnation where the Award is in an aggregate amount less than twenty-five percent (25%) of the original principal balance of the Note, and if, in the reasonable judgment of Beneficiary, the Trust Property can be restored prior to the earlier to occur of (i) the date which is six (6) months following such Taking and (ii) the date which is twelve (12) months prior to the Maturity Date (as defined in the Note), and after such restoration will adequately secure the outstanding balance of the Debt and will have a value

12

at least equal to the value immediately prior to such Taking, then, if no Event of Default shall have occurred and be then continuing, the proceeds of the Award (after reimbursement of any expenses incurred by Beneficiary) shall be applied to reimburse Trustor for the cost of restoring and rebuilding the Trust Property, and such Award shall be disbursed in the same manner as provided in Paragraph 3(c)(iii) for the application of Insurance Proceeds. Trustor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Trustor shall pay all costs (and if required by Beneficiary, Trustor shall deposit the total thereof with Beneficiary in advance) of such restoring, repairing, replacing or rebuilding in excess of the Award made available pursuant to the terms hereof. Any surplus which may remain out of the Award received by Beneficiary after payment of such costs of restoration, repair, replacement or rebuilding shall, in the sole and absolute discretion of Beneficiary, be retained by Beneficiary and applied to payment of the Debt or paid to Trustor.

      (d)     Except as provided in Paragraph 8(c) above, the Award collected upon any Condemnation shall, at the option of Beneficiary in its sole discretion, be applied to the payment of the Debt or applied to reimburse Trustor for the cost of restoring and rebuilding the Trust Property in the same manner as provided in Paragraph 3(c)(iii) for the application of Insurance Proceeds. If Beneficiary elects to apply any portion of an Award to the payment of the Debt prior to the final sale of the Loan in a Secondary Market Transaction (as hereinafter defined), Trustor shall immediately upon demand reimburse Beneficiary for any and all Hedge Losses (as defined in Paragraph 3(c)(ii) above) resulting, either directly or indirectly, from that portion of the Debt so paid. Additionally, throughout the term of the Loan if an Event of Default, or an event which with notice and/or the passage of time or both would constitute an Event of Default, has occurred then the Trustor shall pay to Beneficiary, with respect to any payment of the Debt pursuant to this paragraph, an additional amount equal to the Proportionate Yield Maintenance Premium in accordance with Paragraph 48 below; provided, however, that if an Event of Default, or an event which with notice and/or the passage of time or both would constitute an Event of Default, has not occurred, then the Proportionate Yield Maintenance Premium shall not be payable. Any such application to the Debt shall (i) be applied to those payments of principal and interest last due under the Note but shall not postpone or reduce any payments otherwise required pursuant to the Note other than such last due payments and (ii) not cause or result in the Monthly Debt Service Payment Amount under the Note to be re-cast based upon the reduction in the principal balance of the Loan and the number of months remaining until the Maturity Date. If the Trust Property is sold, through foreclosure or otherwise, prior to the receipt by Beneficiary of such Award, Beneficiary shall have the right, whether or not a deficiency judgment on the Note shall be recoverable or shall have been sought, recovered or denied, to receive all or a portion of said Award sufficient to pay the Debt.

      (e)     Notwithstanding any Taking by any public or quasi-public authority (including, without limitation, any transfer made in lieu of or in anticipation of such a Taking), Trustor shall continue to pay the Debt at the time and in the manner provided for in the Note, in this Deed of Trust and the other Loan Documents and the Debt shall not be reduced unless and until any Award shall have been actually received and applied by Beneficiary to expenses of collecting the Award and to discharge of the Debt.

     9.     Leases and Rents.

13

(a)     Trustor does hereby absolutely and unconditionally assign to Beneficiary, all of Trustor's right, title and interest in all current and future Leases and Rents, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Beneficiary shall not be construed to bind Beneficiary to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Beneficiary. Nevertheless, subject to the terms of this paragraph, Beneficiary grants to Trustor a revocable license to operate and manage the Trust Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof, sufficient to discharge all current sums due on the Debt, in trust for the benefit of Beneficiary for use in the payment of such sums.  Upon an Event of Default, without the need for notice or demand, the license granted to Trustor herein shall automatically be revoked, and Beneficiary shall immediately be entitled to possession of all Rents, whether or not Beneficiary enters upon or takes control of the Trust Property.  Beneficiary is hereby granted and assigned by Trustor the right, at its option, upon revocation of the license granted herein, to enter upon the Trust Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Beneficiary in its sole discretion shall deem proper.

(b)     All Leases executed after the date hereof shall be written on the standard form of lease which has been approved by Beneficiary.  No material changes may be made to the Beneficiary approved standard lease without the prior written consent of Beneficiary.  All Leases executed after the date hereof shall provide that they are subordinate to this Deed of Trust and that the tenant agrees to attorn to Beneficiary.  Unless otherwise approved by Beneficiary, each retail Lease shall contain a provision requiring continuous operation of tenant's business on the premises, and shall contain a prohibition against tenant operating a competing business at or near the Trust Property.  None of the Leases shall contain any option to purchase, any right of first refusal to lease or purchase, any right to terminate the lease term (except in the event of the destruction of all or substantially all of the Trust Property), any non-disturbance or similar recognition agreement, any requirement that the Trustor rebuild the Trust Property in connection with a casualty or condemnation of any portion of the Trust Property, or any other similar provisions which adversely affect the Trust Property or which might adversely affect the rights of any holder of the Loan, without the prior written consent of Beneficiary. Each tenant shall conduct business only in that portion of the Trust Property covered by its Lease.  Upon request, Trustor shall furnish Beneficiary with executed copies of all Leases.

(c)     Trustor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Beneficiary of all notices of default which Trustor shall send or receive thereunder; (iii) shall enforce all the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; and (vi) shall deliver to Beneficiary, upon request, tenant estoppel certificates from each commercial tenant at the Trust Property in form and substance reasonably satisfactory to Beneficiary, provided that Trustor shall not be required to deliver such certificates more frequently than once in any calendar year.  Except to the extent Trustor is acting in the ordinary course of business and in a commercially reasonable manner, or Trustor has received the prior

14

written consent of Beneficiary, Trustor shall not (A) alter, modify or change the terms of any Lease in any material respect; (B) consent to any assignment of or subletting under any Lease not in accordance with its terms; and (C) cancel or terminate any Lease or accept a surrender thereof, unless such tenant is in default thereunder; provided, however, that any Lease may be canceled if at the time of the cancellation thereof a new Lease is entered into on substantially the same terms or more favorable terms as the canceled Lease.

      (d)    Trustor may enter into proposed new Leases and proposed renewals or extensions of existing Leases without the prior written consent of Trustee if such proposed Lease or extension: (i) covers less than ten percent (10%) of the gross leaseable area of the Trust Property, or accounts for less than ten percent (10%) of the total gross rental revenues of the Trust Property; (ii) has an initial term of not less than three (3) years or greater than ten (10) years; (iii) provides for rental rates comparable to existing local market rates and is an arms-length transaction; (iv) does not contain any options for renewal or expansion by the tenant thereunder at rental rates which are either below comparable market levels or less than the rental rates paid by the tenant during the initial lease term; (v) is to a tenant which is experienced, creditworthy and reputable; and (vi) complies with the requirements of subparagraph (b), above. Trustor may enter into a proposed lease which does not satisfy all of the conditions set forth in clauses (i) through (vi) immediately above only with the prior written consent of Beneficiary, such consent not to be unreasonably withheld or delayed. Trustor shall deliver to Beneficiary true, complete and correct copies of any proposed Lease which requires Beneficiary's prior written consent hereunder and Beneficiary shall approve or disapprove such proposed Lease within ten (10) business days after its receipt of same. In the event Beneficiary does not disapprove the proposed Lease within such 10 business day period, then the proposed Lease shall be deemed approved, provided that such deemed approval shall only be effective if the envelope in which the proposed Lease is delivered to Beneficiary and the transmittal memo accompanying the Lease both have written the following notice in bold-face capital letters in 14-point font or larger: "RESPONSE REQUIRED WITHIN 10 BUSINESS DAYS OF RECEIPT. THIS ENVELOPE CONTAINS A PROPOSED LEASE WHICH, IN ACCORDANCE WITH PARAGRAPH 9(d) OF THAT CERTAIN DEED OF TRUST ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING MADE AS OF NOVEMBER/2 , 2002, by 519 HCT 2002 LLC, TO CHICAGO TITLE INSURANCE COMPANY FOR THE BENEFIT OF UBS WARBURG REAL ESTATE INVESTMENTS INC, IS SUBJECT TO APPROVAL BY UBS WARBURG REAL ESTATE INVESTMENTS INC. BUT SHALL BE DEEMED APPROVED IF NOT DISAPPROVED IN WRITING PRIOR TO THE EXPIRATION OF 10 BUSINESS DAYS AFTER RECEIPT." Trustor expressly understands that any and all new or proposed leases are included in the definition of "Lease" or "Leases" as such terms may be used throughout this Deed of Trust and the other Loan Documents.

      (e)    All security deposits of tenants, whether held in cash or any other form, shall not be commingled with any other funds of Trustor and, if cash, shall be deposited by Trustor at such commercial or savings bank or banks as may be reasonably satisfactory to Beneficiary. Any bond or other instrument which Trustor is permitted to hold in lieu of cash security deposits under any applicable legal requirements shall be maintained in full force and effect in the full amount of such deposits unless replaced by cash deposits as hereinabove described, shall be issued by an institution reasonably satisfactory to Beneficiary, shall name

Beneficiary as payee or beneficiary thereunder (or at Beneficiary's option, be fully assignable to Beneficiary) and shall, in all respects, comply with any applicable legal requirements and otherwise be reasonably satisfactory to Beneficiary. Trustor shall, upon request, provide Beneficiary with evidence reasonably satisfactory to Beneficiary of Trustor's compliance with the foregoing. Following the occurrence and during the continuance of any Event of Default, Trustor shall, upon Beneficiary's request, if permitted by any applicable legal requirements, turn over to Beneficiary the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Trust Property, to be held by Beneficiary subject to the terms of the Leases.

10. <u>Representations, Warranties and Covenants Concerning Loan</u>. Trustor represents, warrants and covenants as follows:

(a) <u>Organization and Existence</u>. Trustor is duly organized and validly existing as a limited liability company in good standing under the laws of the State of California and in all other jurisdictions in which Trustor is transacting business. Trustor has the power and authority to execute, deliver and perform the obligations imposed on it under the Loan Documents and to consummate the transactions contemplated by the Loan Documents.

(b) <u>Authorization</u>. Trustor has taken all necessary actions for the authorization of the borrowing on account of the Loan and for the execution and delivery of the Loan Documents, including, without limitation, that those members of Trustor whose approval is required by the terms of Trustor's organizational documents have duly approved the transactions contemplated by the Loan Documents and have authorized execution and delivery thereof by the respective signatories. No other consent by any local, state or federal agency is required in connection with the execution and delivery of the Loan Documents. Trustor is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

(c) <u>Valid Execution and Delivery</u>. All of the Loan Documents requiring execution by Trustor have been duly and validly executed and delivered by Trustor.

(d) <u>Enforceability</u>. All of the Loan Documents constitute valid, legal and binding obligations of Trustor and are fully enforceable against Trustor in accordance with their terms by Beneficiary and its successors, transferees and assigns, subject only to bankruptcy laws and general principles of equity.

(e) <u>No Conflict/Violation of Law</u>. The execution, delivery and performance of the Loan Documents by the Trustor will not cause or constitute a default under or conflict with the organizational documents of Trustor, any Guarantor or any general partner or managing member of Trustor or any Guarantor. The execution, delivery and performance of the obligations imposed on Trustor under the Loan Documents will not cause Trustor to be in default, including after due notice or lapse of time or both, under the provisions of any agreement, judgment or order to which Trustor is a party or by which Trustor is bound.

(f) <u>Compliance with Applicable Laws and Regulations</u>. All of the Improvements and the use of the Trust Property comply with, and shall remain in compliance

16

with, all applicable laws, zoning and subdivision ordinances (including without limitation, parking requirements), rules, regulations, covenants and restrictions now or hereafter affecting or otherwise relating to the ownership, construction, occupancy, use or operation of the Trust Property, including all applicable laws, rules and regulations pertaining to requirements for equal opportunity, anti-discrimination, fair housing, environmental protection, zoning and land use, and Trustor has not received any notice of any violation of any of the foregoing. The Improvements comply with, and shall remain in compliance with, applicable health, fire and building codes. There is no evidence of any illegal activities relating to controlled substances on the Trust Property. All certifications, permits, licenses and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as an office property have been obtained and are in full force and effect.

(g)    Consents Obtained.  All consents, approvals, authorizations, orders or filings with any court or governmental agency or body, if any, required for the execution, delivery and performance of the Loan Documents by Trustor have been obtained or made.

(h)    No Litigation.  There are no pending actions, suits or proceedings, arbitrations or governmental investigations against the Trust Property, an adverse outcome of which would materially affect the Trustor's performance under the Note, this Deed of Trust or the other Loan Documents.

(i)    Title.  Trustor has good, marketable and insurable title to the Trust Property and Trustor possesses an unencumbered fee estate in the Premises and the Improvements and it owns the Trust Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Deed of Trust (the "Permitted Exceptions") and this Deed of Trust is and will remain a valid and enforceable first lien on and security interest in the Trust Property, subject only to said exceptions. Trustor is not a party to any outstanding contract or agreement providing for or requiring it to convey its interest in the Trust Property to any person or entity, and no person or entity other than Trustor has any beneficial or equitable right, title or interest in the Trust Property, or any part thereof. The possession of the Trust Property has been peaceful and undisturbed and title thereto has not been disputed or questioned to the best of Trustor's knowledge. Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust and shall forever warrant and defend the same to Beneficiary against the claims of all persons whomsoever.

(j)    Permitted Exceptions.  The Permitted Exceptions do not and will not materially and adversely affect (1) the ability of the Trustor to pay in full the principal and interest on the Note in a timely manner or (2) the use of the Trust Property for the use currently being made thereof, the operation of the Trust Property as currently being operated or the value of the Trust Property.

(k)    First Lien.  Upon the execution by the Trustor and the recording of this Deed of Trust, and upon the execution and filing of UCC-1 financing statements or amendments thereto, the Beneficiary will have a valid first lien on the Trust Property and a valid

17

security interest in the Equipment subject to no liens, charges or encumbrances other than the Permitted Exceptions.

(l)    <u>ERISA</u>. The Trustor has made and shall continue to make all required contributions to all employee benefit plans, if any, and the Trustor has no knowledge of any material liability which has been incurred by the Trustor which remains unsatisfied for any taxes or penalties with respect to any employee benefit plan or any multi-employer plan, and each such plan has been administered in compliance with its terms and the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>") and any other federal or state law.

(m)    <u>Contingent Liabilities</u>. The Trustor has no known material contingent liabilities.

(n)    <u>No Other Obligations</u>. The Trustor has no material financial obligation under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Trustor is a party or by which the Trustor or the Trust Property is otherwise bound, other than obligations incurred in the ordinary course of the operation of the Trust Property and other than obligations under this Deed of Trust and the other Loan Documents.

(o)    <u>Fraudulent Conveyance</u>. The Trustor (1) has not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor and (2) received reasonably equivalent value in exchange for its obligations under the Loan Documents. Giving effect to the Loan contemplated by the Loan Documents, the fair saleable value of the Trustor's assets exceed and will, immediately following the execution and delivery of the Loan Documents, exceed the Trustor's total liabilities, including, without limitation, subordinated, unliquidated, disputed or contingent liabilities. The fair saleable value of the Trustor's assets is and will, immediately following the execution and delivery of the Loan Documents, be greater than the Trustor's probable liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured. The Trustor's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted. The Trustor does not intend to, and does not believe that it will, incur debts and liabilities (including, without limitation, contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of the Trustor).

(p)    <u>Investment Company Act</u>. The Trustor is not (1) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; (2) a "holding company" or a "subsidiary company" of a "holding company" or an "affiliate" of either a "holding company" or a "subsidiary company" within the meaning of the Public Utility Holding Company Act of 1935, as amended; or (3) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

(q)    Access/Utilities. The Trust Property has adequate rights of access to public ways and is served by adequate water, sewer, sanitary sewer and storm drain facilities. All public utilities necessary to the continued use and enjoyment of the Trust Property as presently used and enjoyed are located in the public right-of-way abutting the Trust Property, and all such utilities are connected so as to serve the Trust Property without passing over other property. All roads necessary for the full utilization of the Trust Property for its current purpose have been completed and dedicated to public use and accepted by all governmental authorities or are the subject of access easements for the benefit of the Trust Property.

(r)    Taxes Paid. Trustor has filed all federal, state, county and municipal tax returns required to have been filed by Trustor, and has paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Trustor, and Trustor has no knowledge of any basis for additional assessment with respect to such taxes.

(s)    Single Tax Lot; Subdivision. The Premises consists of a single tax lot or multiple tax lots; no portion of said tax lot(s) covers property other than the Premises or a portion of the Premises and no portion of the Premises lies in any other tax lot. The Premises consists of one or more legally subdivided lots.

(t)    Special Assessments. Except as disclosed in the title insurance policy, there are no pending or, to the knowledge of the Trustor, proposed special or other assessments for public improvements or otherwise affecting the Trust Property, nor, to the knowledge of the Trustor, are there any contemplated improvements to the Trust Property that may result in such special or other assessments.

(u)    Flood Zone. The Trust Property is not located in a flood hazard area as defined by the Federal Insurance Administration.

(v)    Seismic Exposure. The Premises are not located in Zone 3 or Zone 4 of the "Seismic Zone Map of the U.S."

(w)    Misstatements of Fact. No statement of fact made in the Loan Documents contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained herein or therein not misleading. There is no fact presently known to the Trustor which has not been disclosed which adversely affects, nor as far as the Trustor can foresee, might adversely affect the business, operations or condition (financial or otherwise) of the representing party.

(x)    Condition of Improvements. The Trust Property has not been damaged by fire, water, wind or other cause of loss or any previous damage to the Trust Property has been fully restored.

(y)    No Insolvency or Judgment. Neither Trustor, nor any member of Trustor, nor any guarantor of the Loan is currently (a) the subject of or a party to any completed or pending bankruptcy, reorganization or insolvency proceeding; or (b) the subject of any judgment unsatisfied of record or docketed in any court of the state in which the Trust Property is located or in any other court located in the United States. The Loan will not render the Trustor nor any member of Trustor insolvent. As used herein, the term "insolvent" means that the sum

19

total of all of an entity's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all such entity's non-exempt assets, i.e., all of the assets of the entity that are available to satisfy claims of creditors.

(z)    No Condemnation. No part of any property subject to this Deed of Trust has been taken in condemnation or other like proceeding nor is any proceeding pending, threatened or known to be contemplated for the partial or total condemnation or taking of the Trust Property.

(aa)    No Labor or Materialmen Claims. All parties furnishing labor and materials have been paid in full and, except for such liens or claims insured against by the policy of title insurance to be issued in connection with the Loan, there are no mechanics', laborers' or materialmens' liens or claims outstanding for work, labor or materials affecting the Trust Property, whether prior to, equal with or subordinate to the lien of this Deed of Trust.

(bb)    No Purchase Options. No tenant, person, party, firm, corporation or other entity has an option to purchase the Trust Property, any portion thereof or any interest therein.

(cc)    Leases. The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust. No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases. As of the date hereof, (i) the Trustor is the owner and holder of the landlord's interest under each Lease; (ii) there are no prior assignments of any Lease or any portion of Rents which are presently outstanding and have priority over the Assignment of Leases and Rents (the "Assignment of Leases and Rents"), dated the date hereof, given by Trustor to Beneficiary and intended to be duly recorded; (iii) the Leases are on the standard form of lease approved by Beneficiary and have not been modified or amended, except as disclosed to Beneficiary in writing on the date hereof; (iv) each Lease is in full force and effect; (v) neither Trustor nor any tenant under any Lease, other than MFN which is in default because of its pending bankruptcy, is in default under any of the terms, covenants or provisions of the Lease, and Trustor knows of no event which, but for the passage of time or the giving of notice or both, would constitute an event of default under any Lease; (vi) there are no offsets or defenses to the payment of any portion of the Rents; (vii) all Rents due and payable under each Lease have been paid in full and no said Rents have been paid more than one (1) month in advance of the due dates thereof; and (viii) none of the Leases at the Trust Property, other than the MFN Lease , are subject to any actions, whether voluntary or otherwise, against the tenants thereunder under the bankruptcy or insolvency laws of the United States or any state and to Trustor's knowledge, no such actions have been threatened.

(dd)    Appraisal. All requirements and conditions of the appraisal of the Property submitted to Beneficiary in connection with the Loan, upon which the value of the Trust Property was conditioned, have been fully satisfied.

(ee)    Boundary Lines. All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties

encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Trust Property except those which are insured against by title insurance.

(ff)    Survey.  The survey of the Trust Property delivered to Beneficiary in connection with this Deed of Trust, has been performed by a duly licensed surveyor or registered professional engineer in the jurisdiction in which the Trust Property is situated, is certified to the Beneficiary, its successors and assigns, and the title insurance company, and is in accordance with the most current minimum standards for title surveys as determined by the American Land Title Association, with the signature and seal of a licensed engineer or surveyor affixed thereto, and does not fail to reflect any material matter affecting the Trust Property or the title thereto.

(gg)    Forfeiture.  There has not been and shall never be committed by Trustor or any other person in occupancy of or involved with the operation or use of the Trust Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Trustor's obligations under any of the Loan Documents.

(hh)    The Management Agreement, dated October 16, 2002 (the "Management Agreement") between Trustor and Redding Management, Inc. ("Manager") pursuant to which Manager operates the Trust Property is in full force and effect and there is no default or violation by any party thereunder.  The fees payable to Manager under the Management Agreement, and the terms and provisions of the Management Agreement, are subordinate to this Deed of Trust and the Manager shall attorn to Beneficiary. The Management Agreement is the sole agreement relating to the management or operation of the Trust Property as of the date hereof.  Trustor shall not terminate, cancel, modify, renew or extend the Management Agreement, or enter into any other agreement relating to the management or operation of the Trust Property with Manager or any other party without the express written consent of Beneficiary, which consent shall not be unreasonably withheld and, in the case of any termination of the current Manager and/or appointment of a new Manager, shall be conditioned upon receipt by Beneficiary of a written confirmation from the Rating Agencies to the effect that such termination of the current Manager and/or appointment of a new Manager will not result in a requalification, reduction or withdrawal of any current securities rating assigned in a Securitization (as hereinafter defined).  If at any time Beneficiary consents to the appointment of a new Manager, such new Manager and Trustor shall, as a condition of Beneficiary's consent, execute an Assignment and Subordination of Management Agreement in the form then used by Beneficiary.

(ii)    The Note, this Deed of Trust and the other Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Deed of Trust and the other Loan Documents, or the exercise of any right thereunder, render this Deed of Trust unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

11.    <u>Single Purpose Entity/Separateness</u>. Trustor represents, warrants and covenants as follows:

(a)    Trustor does not own and will not own any asset or property other than (i) the Trust Property, and (ii) incidental personal property necessary for the ownership or operation of the Trust Property.

(b)    Trustor will not engage in any business other than the ownership, management and operation of the Trust Property and Trustor will conduct and operate its business as presently conducted and operated.

(c)    Trustor will not enter into any contract or agreement with any affiliate of the Trustor, any constituent party of Trustor, any guarantor (a "Guarantor") of the Debt or any part thereof or any affiliate of any constituent party or Guarantor, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d)    Trustor has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than the Debt except for trade payables incurred in the ordinary course of its business of owning and operating the Trust Property, provided that such debt (i) is not evidenced by a note, (ii) is not outstanding for more than sixty (60) days with trade creditors and in amounts as are normal and reasonable under the circumstances, and (iii) does not exceed $100,000.00 in the aggregate. No indebtedness other than the Debt may be secured (subordinate or <u>pari passu</u>) by the Trust Property.

(e)    Trustor has not made and will not make any loans or advances to any third party (including any affiliate or constituent party of Trustor, any Guarantor or any affiliate or constituent party of Guarantor), and shall not acquire obligations or securities of its affiliates or any constituent party.

(f)    Trustor is and will remain solvent and Trustor will pay its debts and liabilities from its assets as the same shall become due. Trustor agrees to give prompt notice to Beneficiary of the insolvency or bankruptcy filing of Trustor or any general partner, managing member or controlling shareholder of Trustor, or the death, insolvency or bankruptcy filing of any Guarantor.

(g)    Trustor has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Trustor will not amend, modify or otherwise change the partnership certificate, partnership agreement, articles of incorporation and bylaws, articles of organization or operating agreement, trust or other organizational documents of Trustor.

(h)    Trustor will maintain all of its books, records, financial statements and bank accounts separate from those of its affiliates and any constituent party of Trustor and Trustor will file its own tax returns. Trustor shall maintain its books, records, resolutions and agreements as official records.

22

(i)     Trustor will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Trustor, any constituent party of Trustor, any Guarantor or any affiliate of any constituent party or Guarantor), shall correct any known misunderstanding regarding its status as a separate entity, shall conduct business in its own name, shall not identify itself or any of its affiliates as a division or part of the other and shall maintain and utilize separate stationery, invoices and checks.

(j)     Trustor will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k)     Neither Trustor nor any constituent party of Trustor will seek the dissolution, winding up, liquidation, consolidation or merger, in whole or in part, of the Trustor.

(l)     Trustor will not commingle the funds and other assets of Trustor with those of any affiliate or constituent party of Trustor, any Guarantor, or any affiliate of any constituent party or Guarantor, or any other person.

(m)     Trustor has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party, any Guarantor, or any affiliate of any constituent party or Guarantor, or any other person.

(n)     Trustor does not and will not guarantee, become obligated for or hold itself out to be responsible for the debts or obligations of any other person or entity or the decisions or actions respecting the daily business or affairs of any other person or entity.

(o)     Trustor will not permit any affiliate or constituent party of Trustor independent access to its bank accounts.

(p)     Trustor shall pay the salaries of its own employees and maintain a sufficient number of employees in light of its contemplated business operations.

12.     Maintenance of Trust Property.   Trustor shall cause the Trust Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Beneficiary, which consent shall not be unreasonably withheld if such proposed removal, demolition or alteration is conducted in the ordinary course of business and does not detract from the economic value of the Trust Property. Trustor shall promptly comply with all laws, orders and ordinances affecting the Trust Property, or the use thereof. Trustor shall promptly repair, replace or rebuild any part of the Trust Property that becomes damaged or worn. Trustor shall comply with all of the recommendations concerning the maintenance and repair of the Trust Property which are contained in the inspection and engineering report which was delivered to Beneficiary in connection with the origination of the Loan.

13.     Transfer or Encumbrance of the Trust Property.

23

(a)    Trustor acknowledges that Beneficiary has examined and relied on the creditworthiness and experience of Trustor in owning and operating properties such as the Trust Property in agreeing to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, should Trustor default in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property. Trustor shall not, without the prior written consent of Beneficiary, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer (collectively, "Transfer") the Trust Property or any part thereof, or permit the Trust Property or any part thereof to be Transferred.

(b)    A Transfer within the meaning of this Paragraph 13 shall be deemed to include (i) an installment sales agreement wherein Trustor agrees to sell the Trust Property or any part thereof for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in and to any Leases or any Rents; (iii) if Trustor, Guarantor, or any general partner, managing member or controlling shareholder of Trustor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such corporation; (iv) if Trustor, any Guarantor or any general partner, managing member or controlling shareholder of Trustor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of the partnership interest of any general partner, managing partner or limited partner or the transfer of the interest of any joint venturer or member; and (v) any pledge, hypothecation, assignment, transfer or other encumbrance of any direct or indirect ownership interest in Trustor.

(c)    Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a Transfer without Beneficiary's consent. This provision shall apply to every Transfer of the Trust Property regardless of whether voluntary or not, or whether or not Beneficiary has consented to any previous Transfer of the Trust Property.

(d)    Beneficiary's consent to one Transfer of the Trust Property shall not be deemed to be a waiver of Beneficiary's right to require such consent to any future Transfer. Any Transfer of the Trust Property made in contravention of this paragraph shall be null and void and of no force and effect.

(e)    Trustor agrees to bear and shall pay or reimburse Beneficiary on demand for all reasonable expenses (including, without limitation, reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Beneficiary in connection with the review, approval and documentation of any such Transfer.

(f)    Beneficiary's consent to a Transfer will not be unreasonably withheld after consideration of all relevant factors, provided that:

(A)    no Event of Default or event which with the giving of notice or the passage of time or both would constitute an Event of Default shall have occurred and remain uncured;

(B)    the proposed transferee (the "Transferee") shall be a reputable entity or person of good character, creditworthy, with sufficient financial worth considering the obligations assumed and undertaken, as evidenced by financial statements and other information reasonably requested by Beneficiary, and the Transferee shall satisfy the Single Purpose Entity/Separateness requirements of Paragraph 11 above;

(C)    the Transferee and its property manager shall have sufficient experience in the ownership and management of properties similar to the Trust Property, and Beneficiary shall be provided with reasonable evidence thereof (and Beneficiary reserves the right to approve the Transferee without approving the substitution of the property manager);

(D)    Beneficiary shall have received a non-consolidation opinion and confirmation in writing from the Rating Agencies (as hereinafter defined) to the effect that such transfer will not result in a re-qualification, reduction or withdrawal of any rating initially assigned or to be assigned in a Secondary Market Transaction (as hereinafter defined). The term "Rating Agencies" as used herein shall mean each of Standard & Poor's Ratings Group, a division of the McGraw-Hill Companies, Inc., Moody's Investors Service, Inc., Duff & Phelps Credit Rating Co. and Fitch Investors Service, L.P., or any other nationally-recognized statistical rating agency which has been approved by Beneficiary;

(E)    the Transferee shall have executed and delivered to Beneficiary an assumption agreement in form and substance acceptable to Beneficiary, evidencing such Transferee's agreement to abide and be bound by the terms of the Note, this Deed of Trust and the other Loan Documents, together with such legal opinions and title insurance endorsements as may be reasonably requested by Beneficiary; and

(F)    Beneficiary shall have received an assumption fee equal to one percent (1%) of the Debt on the date of such assumption and the payment of, or reimbursement for, all costs and expenses incurred by Beneficiary in connection with such assumption (including, without limitation, reasonable attorney's fees and costs). Beneficiary may, as a condition to evaluating any requested consent to a Transfer, require that Trustor post a cash deposit with Beneficiary in an amount equal to Beneficiary's anticipated costs and expenses in evaluating any such request for consent.

(G)    Notwithstanding anything to the contrary contained in this Paragraph 13, holders of interests in Trustor (or holders of interests in any entity directly or indirectly holding an interest in Trustor) as of the date of this Deed of Trust (the "Interest Holders") shall have the right to transfer their interest in Trustor (or any entity directly or indirectly holding an interest in Trustor) to another person or entity who is not an Interest

25

Holder, including, without limitation, to immediate family members for estate planning purposes, without Beneficiary's consent; provided, however, that:

    (i)    after taking into account any prior transfers pursuant to this Paragraph 13, whether to the proposed transferee or otherwise, no such transfer (or series of transfers) shall result in (x) the proposed transferee, together with all members of his/her immediate family or any affiliates thereof, owning in the aggregate (directly, indirectly or beneficially) more than 20% of the interests in Trustor (or any entity directly or indirectly holding an interest in Trustor); or (y) a transfer in the aggregate of more than 20% of the interests in Trustor as of the date hereof;

    (ii)    no such transfer of interest shall result in a change of control of Trustor (or its managing member/general partner) or the day to day operations of the Trust Property;

    (iii)    Trustor shall give Beneficiary notice of such transfer together with copies of all instruments effecting such transfer not less than ten (10) days prior to the date of such transfer;

    (iv)    no Event of Default shall have occurred and remain uncured; and

    (v)    the legal and financial structure of Trustor and its shareholders, partners or members, and the single purpose nature and bankruptcy remoteness of Trustor and its shareholders, partners or members after such transfer, shall satisfy Beneficiary's then current applicable underwriting criteria and requirements, including, without limitation, the requirement, at the request of Beneficiary, to deliver written confirmations from the Rating Agencies that such transfer or series of transfers will not result in a qualification, downgrade or withdrawal of the then applicable ratings.

    (H)    In addition to the provisions of Paragraph 13(g) above, a transfer that occurs by inheritance, devise or bequest or by operation of law upon the death of a natural person who is an Interest Holder shall not require the consent of Beneficiary, provided that such transfer is to a member of the immediate family of such Interest Holder, or a trust established for the benefit of such immediate family member, and provided further that each of the following transfer conditions (the "49% Transfer Conditions") are satisfied:

    (i)    after taking into account any prior transfers pursuant to this Paragraph 13, whether to the proposed transferee or otherwise, no such transfer (or series of transfers) shall result in (x) the proposed transferee, together with all members of his/her immediate family or any affiliates thereof, owning in the aggregate (directly, indirectly or beneficially) more than 49% of the interests in Trustor (or any entity directly or indirectly holding an interest in Trustor), or (y) a transfer in the aggregate of more than 49% of the interests in Trustor as of the date hereof;

    (ii)    no such transfer of interest shall result in a change of control of Trustor (or its managing member/general partner) or the day to day operations of the Trust Property;

(iii)    Trustor shall give Beneficiary notice of such transfer together with copies of all instruments effecting such transfer not less than ten (10) days prior to the date of such transfer;

(iv)    no Event of Default shall have occurred and remain uncured; and

(v)    the legal and financial structure of Trustor and its shareholders, partners or members, and the single purpose nature and bankruptcy remoteness of Trustor and its shareholders, partners or members after such transfer, shall satisfy Beneficiary's then current applicable underwriting criteria and requirements, including without limitation the requirement, at the request of Beneficiary, to deliver written confirmations from the Rating Agencies that such transfer or series of transfers will not result in a qualification, downgrade or withdrawal of the then applicable ratings.

(vi)    For purposes of this Paragraph 13, (i) a change of control of Trustor (or its managing member/general partner) shall be deemed to have occurred if there is any change in the identity of the individual or entities or group of individuals or entities who have the right, by virtue of any partnership agreement, articles of incorporation, by-laws, articles of organization, operating agreement or any other agreement, with or without taking any formative action, to cause Trustor (or its managing member/general partner) to take some action or to prevent, restrict or impede Trustor from taking some action which, in either case, Trustor could take or could refrain from taking were it not for the rights of such individuals; and (ii) an "immediate family member" shall mean a spouse or a child of any Interest Holder.

14.    Estoppel Certificates and No Default Affidavits.  Trustor shall, within ten (10) days after request by Beneficiary, furnish Beneficiary with a statement, duly acknowledged and certified, setting forth (i) the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) a statement that the Note, this Deed of Trust and the other Loan Documents are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.  Trustor shall, within ten (10) days after request by Beneficiary, furnish Beneficiary with a certificate reaffirming all representations and warranties of Trustor set forth herein and in the other Loan Documents as of the date requested by Beneficiary or, to the extent of any changes to any such representations and warranties, so stating such changes.

15.    Changes in Laws Regarding Taxation.  If any law is enacted or adopted or amended after the date of this Deed of Trust which deducts the Debt from the value of the Trust Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Beneficiary's interest in the Trust Property, Trustor will pay such tax, with interest and penalties thereon, if any.  In the event Beneficiary is advised by counsel chosen by it that the payment of such tax or interest and penalties by Trustor would be unlawful or taxable to Beneficiary or unenforceable or provide the basis for a defense of usury, then in any such event, Beneficiary shall have the option, upon not less than ninety (90) days written notice to Trustor, to declare the Debt immediately due and payable.

16.    <u>No Credits on Account of the Debt</u>.  Trustor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Trust Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Trust Property, or any part thereof, for real estate tax purposes by reason of this Deed of Trust or the Debt.  In the event such claim, credit or deduction shall be required by law, Beneficiary shall have the option, upon not less than ninety (90) days written notice to Trustor, to declare the Debt immediately due and payable.

17.    <u>Financial Statements</u>.

(a)    The financial statements heretofore furnished to Beneficiary are, as of the dates specified therein, complete and correct and fairly present the financial condition of the Trustor and any other persons or entities that are the subject of such financial statements, and are prepared in accordance with generally accepted accounting principles.  Trustor does not have any contingent liabilities, liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments that are known to Trustor and reasonably likely to have a materially adverse effect on the Trust Property or the operation thereof as an office project, except as referred to or reflected in said financial statements.  Since the date of such financial statements, there has been no materially adverse change in the financial condition, operation or business of Trustor from that set forth in said financial statements.

(b)    Trustor will maintain full and accurate books of accounts and other records reflecting the results of the operations of the Trust Property and will furnish to Beneficiary on or before forty-five (45) days after the end of each calendar quarter the following items, each certified by Trustor as being true and correct:  (i) a written statement (rent roll) dated as of the last day of each such calendar quarter identifying each of the Leases by the term, space occupied, rental required to be paid, security deposit paid, any rental concessions, and identifying any defaults or payment delinquencies thereunder; and (ii) monthly and year to date operating statements prepared for each calendar month during each such calendar quarter, noting Net Operating Income (as defined in the Cash Management Agreement), Gross Income from Operations (as defined in the Cash Management Agreement), and Operating Expenses (as defined in the Cash Management Agreement) each of which shall include an itemization of actual (not pro forma) capital expenditures and other information necessary and sufficient under generally accepted accounting practices to fairly represent the financial position and results of operation of the Trust Property during such calendar month, all in form satisfactory to Beneficiary; (iii) a property balance sheet for each such calendar quarter; (iv) a comparison of the budgeted income and expenses and the actual income and expenses for each calendar quarter and year to date together with a detailed explanation of any variances of five percent (5%) or more between budgeted and actual amounts for such quarterly periods and year to date; and (v) a calculation reflecting the Debt Service Coverage Ratio (as defined in the Cash Management Agreement) as of the last day of each such calendar quarter.  Until the final sale of the Loan in a Secondary Market Transaction (hereinafter defined) has occurred, the Trustor shall furnish monthly each of the items listed in the immediately preceding sentence (collectively, the "Pre-Securitization Financials") within twenty (20) days after the end of such month.  Within ninety (90) days following the end of each calendar year, Trustor shall furnish statements of its financial affairs and condition including a balance sheet and a statement of profit and loss for the Trustor in such detail as Beneficiary may request; and setting forth the financial condition and

28

the income and expenses for the Trust Property for the immediately preceding calendar year prepared by a "Big Four" accounting firm or other independent certified public accountant approved by Beneficiary (which approval shall not be unreasonably withheld). Trustor's annual financial statements shall include (i) a list of the tenants, if any, occupying more than twenty (20%) percent of the total floor area of the Improvements, and (ii) a breakdown showing the year in which each Lease then in effect expires and the percentage of total floor area of the Improvements and the percentage of base rent with respect to which Leases shall expire in each such year, each such percentage to be expressed on both a per year and a cumulative basis. Trustor's annual financial statements shall be accompanied by a certificate executed by the chief financial officer of Trustor or the general partner of Trustor, as applicable, stating that each such annual financial statement presents fairly the financial condition of the Trust Property being reported upon and has been prepared in accordance with generally accepted accounting principles consistently applied. At any time and from time to time Trustor shall deliver to Beneficiary or its agents such other financial data as Beneficiary or its agents shall reasonably request with respect to the ownership, maintenance, use and operation of the Trust Property.

(c)　In the event that Trustor fails to provide Beneficiary with Pre-Securitization Financials on or before the date they are due, and if such failure continues for two (2) business days following notice of same from Beneficiary, then, in addition to all other rights and remedies of Beneficiary hereunder, Trustor shall pay to Beneficiary, at Beneficiary's option and in its sole discretion, an amount equal to $10,000 for each Pre-Securitization Financial that is not delivered.

18.　Further Acts, Etc. Trustor will, without expense to Beneficiary, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, subordinations, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Beneficiary shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Beneficiary the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Trustor may be or may hereafter become bound to convey or assign to Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust or for facilitating the sale of the Loan and the Loan Documents as described in Paragraph 51 below.

19.　Recording of Deed of Trust, Etc. Trustor forthwith upon the execution and delivery of this Deed of Trust and thereafter, from time to time, will cause this Deed of Trust, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Trust Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Beneficiary in, the Trust Property. Trustor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Deed of Trust, any mortgage supplemental hereto, any security instrument with respect to the Trust Property, and any instrument of further assurance, and all federal, state, county and municipal taxes (including, without limitation, documentary stamp taxes), duties, imposts, assessments and

29

charges arising out of or in connection with the execution and delivery of this Deed of Trust, any mortgage supplemental hereto, any security instrument with respect to the Trust Property or any instrument of further assurance, except where prohibited by law so to do.

      20.   Events of Default.  The Debt shall become immediately due and payable at the option of Beneficiary upon the happening of any one or more of the following events of default (each, an "Event of Default"):

      (a)   if any portion of the Debt is not paid when due;

      (b)   subject to Trustor's right to contest as provided herein, if any of the Taxes or Other Charges are not paid when the same are due and payable;

      (c)   if the Policies are not kept in full force and effect, or if the Policies are not delivered to Beneficiary upon request;

      (d)   if Trustor effects a Transfer without Beneficiary's prior written consent;

      (e)   if any representation or warranty of Trustor, or of any Guarantor, made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or document furnished to Beneficiary shall have been false or misleading in any material respect when made;

      (f)   if Trustor or any Guarantor shall make an assignment for the benefit of creditors or if Trustor shall generally not be paying its debts as they become due;

      (g)   if a receiver, liquidator or trustee of Trustor or of any Guarantor shall be appointed or if Trustor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Trustor or any Guarantor or if any proceeding for the dissolution or liquidation of Trustor or any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Trustor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days;

      (h)   if Trustor shall be in default under any other mortgage or security agreement covering any part of the Trust Property whether it be superior or junior in lien to this Deed of Trust;

      (i)   subject to Trustor's right to contest as provided herein, if the Trust Property becomes subject to any mechanic's, materialman's or other lien except a lien for local real estate taxes and assessments not then due and payable;

      (j)   if Trustor fails to cure properly any violations of laws or ordinances affecting or which may be interpreted to affect the Trust Property within thirty (30) days after Trustor first receives notice of any such violations; provided, however, if such violation of laws or ordinances is reasonably susceptible of cure, but not within such thirty (30)

day period, then Trustor may be permitted up to an additional sixty (60) days (or such lesser period of time as required by applicable law) to cure such default <u>provided</u> that Trustor diligently and continuously pursues such cure and provided further that Trustor promptly provides Beneficiary with a written report and evidence reasonably satisfactory to Beneficiary to Beneficiary of the progress of Trustor's cure efforts from time to time as requested by Beneficiary;

(k)     except as permitted in this Deed of Trust, the alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Beneficiary;

(l)     if Trustor shall continue to be in default under any term, covenant, or provision of the Note or any of the other Loan Documents, beyond applicable cure periods contained in those documents;

(m)     if Trustor fails to cure a default under any other term, covenant or provision of this Deed of Trust within thirty (30) days after Trustor first receives notice of any such default; <u>provided</u>, <u>however</u>, if such default is reasonably susceptible of cure, but not within such thirty (30) day period, then Trustor may be permitted up to an additional sixty (60) days (but in no event beyond the Maturity Date (as defined in the Note) to cure such default <u>provided</u> that Trustor diligently and continuously pursues such cure and provided further that Trustor promptly provides Beneficiary with a written report and evidence reasonably satisfactory to Beneficiary of the progress of Trustor's cure efforts from time to time as requested by Beneficiary;

(n)     if, without Beneficiary's prior written consent, (i) the Management Agreement is terminated, (ii) the ownership, management or control of Manager is transferred, (iii) there is a material change in the Management Agreement, or (iv) if there shall be a material default by Trustor under the Management Agreement;

(o)     if Trustor ceases to continuously operate the Trust Property or any material portion thereof as an office building for any reason whatsoever (other than temporary cessation in connection with any repair or renovation thereof undertaken with the consent of Beneficiary); or

(p)     if Trustor fails to reimburse Beneficiary in full, within ten (10) days of demand therefor, for Hedge Losses incurred as provided in Paragraph 3(c)(ii) or Paragraph 8(d) hereof.

21.     <u>Late Payment Charge</u>.  If any portion of the Debt is not paid on the date on which it is due, Trustor shall pay to Beneficiary upon demand an amount equal to the lesser of five percent (5%) of such unpaid portion of the Debt or the maximum amount permitted by applicable law in order to defray a portion of the expenses incurred by Beneficiary in handling and processing such delinquent payment and to compensate Beneficiary for the loss of the use of such delinquent payment, and such amount shall be secured by this Deed of Trust.

22.     <u>Right To Cure Defaults</u>.  Upon the occurrence of any Event of Default or if Trustor fails to make any payment or to do any act as herein provided, Beneficiary may, but

-31-

without any obligation to do so and without notice to or demand on Trustor and without releasing Trustor from any obligation hereunder, make or do the same in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof. Beneficiary is authorized to enter upon the Trust Property for such purposes or appear in, defend, or bring any action or proceeding to protect its interest in the Trust Property or to foreclose this Deed of Trust or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate (as defined in the Note) for the period after notice from Beneficiary that such cost or expense was incurred to the date of payment to Beneficiary, shall constitute a portion of the Debt, shall be secured by this Deed of Trust and the other Loan Documents and shall be due and payable to Beneficiary upon demand.

    23.   Remedies.

    (a)    Upon the occurrence of any Event of Default, Beneficiary or Trustee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Trustor and in and to the Trust Property by Beneficiary itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Beneficiary:

    (i)    declare the entire Debt to be immediately due and payable;

    (ii)    institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Deed of Trust in which case the Trust Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

    (iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Deed of Trust for the portion of the Debt then due and payable, subject to the continuing lien of this Deed of Trust for the balance of the Debt not then due;

    (iv)    sell for cash or upon credit the Trust Property or any part thereof and all estate, claim, demand, right, title and interest of Trustor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

    (v)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the other Loan Documents;

    (vi)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Deed of Trust;

     (vii)    take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Beneficiary thereafter to foreclosure this Deed of Trust;

     (viii)   apply for the appointment of a trustee, receiver, liquidator or conservator of the Trust Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Trustor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

     (ix)    enforce Beneficiary's interest in the Leases and Rents and enter into or upon the Trust Property, either personally or by its agents, nominees or attorneys and dispossess Trustor and its agents and servants therefrom, and thereupon Beneficiary may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Trust Property and conduct the business thereat; (B) complete any construction on the Trust Property in such manner and form as Beneficiary deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Trust Property; (D) exercise all rights and powers of Trustor with respect to the Trust Property, whether in the name of Trustor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Trust Property to the payment of Debt, after deducting therefrom all expenses (including reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments, insurance and other charges in connection with the Trust Property, as well as just and reasonable compensation for the services of Beneficiary, its counsel, agents and employees;

     (x)    require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Trust Property occupied by Trustor or any related and/or affiliated party and require Trustor to vacate and surrender possession to Beneficiary of the Trust Property or to such receiver and, in default thereof, evict Trustor or any related and/or affiliated party by summary proceedings or otherwise;

     (xi)    enforce Beneficiary's rights and remedies under the Cash Management Agreement; or

     (xii)   pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code.

In the event of a sale, by foreclosure or otherwise, of less than all of the Trust Property, this Deed of Trust shall continue as a lien on the remaining portion of the Trust Property.

     (b)    The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Beneficiary under this Deed of Trust, whether under the provisions of this paragraph or otherwise, shall be applied by

Beneficiary to the payment of the Debt in such priority and proportion as Beneficiary in its sole discretion shall deem proper.

(c)     Beneficiary or Trustee may adjourn from time to time any sale by it to be made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Beneficiary, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales pursuant hereto, Trustee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Trustor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Trustor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Trustor.

(e)     Upon any sale made under or by virtue of this paragraph, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Trust Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Beneficiary is authorized to deduct under this Deed of Trust.

(f)     No recovery of any judgment by Beneficiary and no levy of an execution under any judgment upon the Trust Property or upon any other property of Trustor shall affect in any manner or to any extent the lien of this Deed of Trust upon the Trust Property or any part thereof, or any liens, rights, powers or remedies of Beneficiary hereunder, but such liens, rights, powers and remedies of Beneficiary shall continue unimpaired as before.

(g)     Beneficiary may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this paragraph at any time before the conclusion thereof, as determined in Beneficiary's sole discretion and without prejudice to Beneficiary.

(h)     The rights and remedies of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. Beneficiary may resort to any remedies and the security given by the Note, this Deed of Trust or in any of the other Loan Documents in whole or in part, and in such portions and in such order as determined by Beneficiary in its sole discretion. No such action shall in any way be considered a waiver or election of any rights, benefits or remedies evidenced or provided by the Note, this Deed of Trust or in any of the other Loan Documents. The failure of Beneficiary or Trustee to exercise any right, remedy or option provided in the Note, this Deed of Trust or any of

34

the other Loan Documents, shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Deed of Trust or any of the other Loan Documents. No acceptance by Beneficiary or Trustee of any payment after the occurrence of any Event of Default and no payment by Beneficiary of any obligation for which Trustor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Trustor, or Trustor's liability to pay such obligation. No sale of all or any portion of the Trust Property, no forbearance on the part of Beneficiary or Trustee , and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Beneficiary to Trustor, shall operate to release or in any manner affect the interest of Beneficiary in the remaining Trust Property or the liability of Trustor to pay the Debt. No waiver by Beneficiary or Trustee shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Beneficiary in exercising its rights and remedies under this Paragraph 23 (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Trustor immediately upon notice from Beneficiary, with interest at the Default Rate for the period after notice from Beneficiary or Trustee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Deed of Trust.

(i)    The interests and rights of Beneficiary under the Note, this Deed of Trust and the other Loan Documents shall not be impaired by any indulgence, including (i) any renewal, extension or modification which Beneficiary may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Beneficiary may grant with respect to the Trust Property or any portion thereof, or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

(j)    In the event the Loan is repaid in whole or in part in connection with the exercise by Beneficiary of any of its remedies hereunder upon the occurrence of an Event of Default (including, without limitation, a foreclosure sale of the Trust Property) and such repayment occurs prior to the Maturity Date, then Trustor shall be required to pay Beneficiary, in addition to such repayment, accrued interest and all other sums due under this Deed of Trust, the (i) Proportionate Yield Maintenance Premium, and (ii) if such repayment occurs prior to the final sale of the Loan in a Secondary Market Transaction, Hedge Losses (as defined in Paragraph 3(c)(ii)).

24.    <u>Right of Entry</u>. In addition to any other rights or remedies granted under this Deed of Trust, Beneficiary or Trustee and/or their respective agents shall have the right to enter and inspect the Trust Property at any reasonable time during the Term. The cost of such inspections or audits shall be borne by Trustor should Beneficiary determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Beneficiary. The cost of such inspections, if not paid for by Trustor following demand, may be added to the Debt and shall bear interest thereafter until paid at the Default Rate.

25.    <u>Security Agreement</u>. This Deed of Trust is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property. Trustor by executing and delivering this Deed of Trust has granted and hereby grants to Beneficiary, as security for the

Debt, a security interest in the Trust Property to the full extent that the Trust Property may be subject to the Uniform Commercial Code (said portion of the Trust Property so subject to the Uniform Commercial Code being called in this paragraph the "Collateral"). This Deed of Trust shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. As such, this Deed of Trust covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Deed of Trust. If an Event of Default shall occur, Beneficiary, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Beneficiary, Trustor shall at its expense assemble the Collateral and make it available to Beneficiary at a convenient place acceptable to Beneficiary. Trustor shall pay to Beneficiary on demand any and all expenses, including attorneys' fees and disbursements, incurred or paid by Beneficiary in protecting its interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Collateral sent to Trustor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Trustor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Beneficiary to the payment of the Debt in such priority and proportions as Beneficiary in its sole discretion shall deem proper. Trustor hereby irrevocably appoints Beneficiary as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Beneficiary, as secured party, in connection with the Collateral covered by this Deed of Trust.

26.　　Actions and Proceedings. Beneficiary or Trustee has the right to appear in and defend any action or proceeding brought with respect to the Trust Property and to bring any action or proceeding, in the name and on behalf of Trustor, which Beneficiary, in its sole discretion, decides should be brought to protect its interest in the Trust Property. Beneficiary shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

27.　　Contest of Certain Claims. Notwithstanding the provisions of Paragraphs 4 and 20 hereof, Trustor shall not be in default for failure to pay or discharge Taxes, Other Charges or mechanic's or materialman's lien asserted against the Trust Property if, and so long as, (a) Trustor shall have provided Beneficiary with written notice thereof within five (5) days of obtaining knowledge thereof; (b) Trustor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Trust Property or any part thereof, to satisfy the same; (c) Trustor shall have furnished to Beneficiary a cash deposit, or an indemnity bond satisfactory to Beneficiary with a surety satisfactory to Beneficiary, in the amount of the Taxes, Other Charges or mechanic's or materialman's lien claim, plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, to assure payment of the matters under contest and to prevent any sale or forfeiture of the Trust Property

36

or any part thereof; (d) Trustor shall promptly upon final determination thereof pay the amount of any such Taxes, Other Charges or claim so determined, together with all costs, interest and penalties which may be payable in connection therewith; (e) the failure to pay the Taxes, Other Charges or mechanic's or materialman's lien claim does not constitute a default under any other deed of trust, mortgage or security interest covering or affecting any part of the Trust Property; and (f) notwithstanding the foregoing, Trustor shall immediately upon request of Beneficiary pay any such Taxes, Other Charges or claim (and if Trustor shall fail so to do, Beneficiary may, but shall not be required to, pay or cause to be discharged or bonded against), if in the opinion of Beneficiary, the Trust Property or any part thereof or interest therein may be in danger of being sold, forfeited, foreclosed, terminated, cancelled or lost. Beneficiary may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Beneficiary, the entitlement of such claimant is established.

28.    **Marshalling and Other Matters.**  Trustor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Trust Property or any part thereof or any interest therein. Further, Trustor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Deed of Trust on behalf of Trustor, and on behalf of each and every person acquiring any interest in or title to the Trust Property subsequent to the date of this Deed of Trust and on behalf of all persons to the extent permitted by applicable law.

29.    **Hazardous Substances.**  Trustor hereby represents and warrants to Beneficiary that, to the best of Trustor's knowledge and except as disclosed in that certain Phase I Environmental Site Assessment dated August 15, 2002 prepared by Eckland Consultants Inc. (the "Environmental Report"): (a) the Trust Property is not in violation of any local, state, federal or other governmental authority, statute, ordinance, code, order, decree, law, permits, rule or regulation pertaining to or imposing liability or standards of conduct concerning environmental regulation, contamination or clean-up including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), the Resource Conservation and Recovery Act, as amended ("RCRA"), the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Hazardous Substances Transportation Act, as amended, the Solid Waste Disposal Act, as amended, the Clean Water Act, as amended, the Clean Air Act, as amended, the Toxic Substance Control Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, any state super-lien and environmental clean-up statutes and all regulations adopted in respect to the foregoing laws (collectively, "Environmental Laws"); (b) the Trust Property is not subject to any private or governmental lien or judicial or administrative notice or action or inquiry, investigation, claim or threatened claim relating to hazardous and/or toxic, dangerous and/or regulated, substances, wastes, materials, raw materials which include hazardous constituents, pollutants or contaminants including without limitation, petroleum, tremolite, anthlophylie, actinolite or polychlorinated biphenyls and any other substances or materials which are included under or regulated by Environmental Laws or which are considered by scientific opinion to be otherwise dangerous in terms of the health, safety and welfare of humans (collectively, "Hazardous Substances"); (c) no Hazardous Substances are or have been (including the period prior to Trustor's acquisition of the Trust Property), discharged, generated, treated, disposed of or stored on, incorporated in, or removed or transported from the Trust Property

37

other than in compliance with all Environmental Laws; (d) no Hazardous Substances are present in, on or under any nearby real property which could migrate to or otherwise affect the Trust Property; and (e) no underground storage tanks exist on any of the Trust Property. So long as Trustor owns or is in possession of the Trust Property, Trustor (i) shall keep or cause the Trust Property to be kept free from Hazardous Substances and in compliance with all Environmental Laws including without limitation any and all environmental permits, (ii) shall not install or permit to be installed on the Premises any underground storage tank, (iii) shall remove such Hazardous Substances and/or cure such violations and/or remove such threats, as applicable, as required by law (or as shall be required by Beneficiary in the case of removal which is not required by law, but in response to the opinion of a licensed hydrogeologist, licensed environmental engineer or other qualified consultant engaged by Beneficiary), promptly after Trustor becomes aware of same, at Trustor's sole expense and (iv) shall comply with all of the recommendations contained in the Environmental Report. Nothing herein shall prevent Trustor from recovering such expenses from any other party that may be liable for such removal or cure. The obligations and liabilities of Trustor under this Paragraph 29 shall survive any termination, satisfaction, or assignment of this Deed of Trust and the exercise by Beneficiary of any of its rights or remedies hereunder, including, without limitation, the acquisition of the Trust Property by foreclosure or a conveyance in lieu of foreclosure.

       30.    Asbestos. Trustor represents and warrants that, to the best of Trustor's knowledge and except as disclosed in the Environmental Report, no asbestos or any substance or material containing asbestos ("Asbestos") is located on the Trust Property. Trustor shall not install in the Trust Property, nor permit to be installed in the Trust Property, Asbestos, and shall remove any friable Asbestos promptly upon discovery to the satisfaction of Beneficiary, at Trustor's sole expense. Trustor shall in all instances comply with, and ensure compliance by all occupants of the Trust Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Trust Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. The obligations and liabilities of Trustor under this Paragraph 30 shall survive any termination, satisfaction, or assignment of this Deed of Trust and the exercise by Beneficiary of any of its rights or remedies hereunder, including but not limited to, the acquisition of the Trust Property by foreclosure or a conveyance in lieu of foreclosure.

       31.    Environmental Monitoring. Trustor shall give prompt written notices to Beneficiary: (a) if Trustor shall become aware of any Hazardous Substances on or near the Trust Property and/or if Trustor shall become aware that the Trust Property is in direct or indirect violation of any Environmental Laws and/or if Trustor shall become aware of any condition on or near the Trust Property which shall pose a threat to the health, safety or welfare of humans; (b) of any proceeding or inquiry by any party with respect to the presence of any Hazardous Substance or Asbestos on, under, from or about the Trust Property, (c) of all claims made or threatened by any third party against Trustor or the Trust Property relating to any loss or injury resulting from any Hazardous Substance or Asbestos, and (d) of Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Trust Property that could cause the Trust Property to be subject to any investigation or cleanup pursuant to any Environmental Law. Trustor shall promptly provide to Beneficiary a copy of any written notice, order or other communication received by Trustor concerning or in connection with any actual or threatened claim, proceeding, investigation or inquiry involving Hazardous Materials and/or

Asbestos on, under, in or near the Trust Property. Trustor shall permit Beneficiary to join and participate in, as a party if it so elects, any legal proceedings or actions initiated with respect to the Trust Property in connection with any Environmental Law or Hazardous Substance, and Trustor shall pay all reasonable attorneys' fees and disbursements incurred by Beneficiary in connection therewith. Upon Beneficiary's request, at any time and from time to time while this Deed of Trust is in effect, Trustor shall provide (i) an inspection or audit of the Trust Property prepared by a licensed hydrogeologist or licensed environmental engineer approved by Beneficiary indicating the presence or absence of Hazardous Substances on, in or near the Trust Property, and (ii) an inspection or audit of the Trust Property prepared by a duly qualified engineering or consulting firm approved by Beneficiary, indicating the presence or absence of Asbestos on the Trust Property. The cost and expense of such audit or inspection shall be paid by Trustor not more frequently than once every five (5) calendar years after the final sale of the Loan in a Secondary Market Transaction unless an Event of Default has occurred and is continuing or Beneficiary, in its good faith judgment, determines that reasonable cause exists for the performance of an environmental inspection or audit of the Trust Property, then such inspections or audits described in the preceding sentence shall be at Trustor's sole expense. If Trustor fails to provide any inspection or audit required pursuant to this Paragraph 31 within thirty (30) days after such request, Beneficiary may order same, and Trustor hereby grants to Beneficiary and its employees and agents access to the Trust Property and a license to undertake such inspection or audit. The cost of such inspection or audit may be added to the Debt and shall bear interest thereafter until paid at the Default Rate. In the event that any environmental site assessment report prepared in connection with such inspection or audit recommends that an operations and maintenance plan be implemented for Asbestos or any Hazardous Substance, Trustor shall cause such operations and maintenance plan to be prepared and implemented at Trustor's expense upon request of Beneficiary. In the event that any investigation, site monitoring, containment cleanup, removal, restoration or other work of any kind is reasonably necessary or desirable under an applicable Environmental Law (the "Remedial Work"), Trustor shall commence and thereafter diligently prosecute to completion all such Remedial Work within thirty (30) days after written demand by Beneficiary for performance thereof (or such shorter period of time as may be required under applicable law). All Remedial Work shall be performed by contractors approved in advance by Beneficiary, and under the supervision of a consulting engineer approved by Beneficiary. All costs and expenses of such Remedial Work shall be paid by Trustor including, without limitation, Beneficiary's reasonable attorneys' fees and disbursements incurred in connection with monitoring or review of such Remedial Work.

32.    Handicapped Access.

(a)    Trustor agrees that the Trust Property shall, at all times strictly comply to the extent applicable with the requirements of the Americans with Disabilities Act of 1990, the Fair Housing Amendments Act of 1988 (if applicable), all state and local laws and ordinances related to handicapped access and all rules, regulations, and orders issued pursuant thereto including, without limitation, the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (collectively, "Access Laws"). Trustor agrees to give prompt notice to Beneficiary of the receipt by Trustor of any complaints related to violation of any Access Laws and of the commencement of any proceedings or investigations which relate to compliance with applicable Access Laws.

(b)     Notwithstanding any provisions set forth herein or in any other document regarding Beneficiary's approval of alterations of the Trust Property, Trustor shall not alter the Trust Property (including without limitation construction of tenant improvements by Trustor or any of its tenants) in any manner which would increase Trustor's responsibilities for compliance with the applicable Access Laws without the prior written approval of Beneficiary. Beneficiary may condition any such approval upon receipt of a certificate of compliance with Access Laws from an architect, engineer, or other person acceptable to Beneficiary.

33.     Indemnification.  In addition to any other indemnifications provided herein or in the other Loan Documents, Trustor shall protect, defend, indemnify and save harmless Beneficiary from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements), imposed upon or incurred by or asserted against Beneficiary by reason of (a) ownership of this Deed of Trust, the Trust Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Trust Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Trust Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Trustor to perform or comply with any of the terms of this Deed of Trust; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Trust Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Substance or Asbestos on, from, or affecting the Trust Property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance or Asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance or Asbestos; (i) any violation of the Environmental Laws, which are based upon or in any way related to such Hazardous Substance or Asbestos including, without limitation, the costs and expenses of any Remedial Work, attorney and consultant fees and disbursements, investigation and laboratory fees, court costs, and litigation expenses; (j) any failure of the Trust Property to comply with any Access Laws; (k) any representation or warranty made in the Note, this Deed of Trust or any of the other Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made; (l) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Trust Property or any part thereof under any legal requirement or any liability asserted against Beneficiary with respect thereto; and (m) the claims of any lessee of any or any portion of the Trust Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease.  Any amounts payable to Beneficiary by reason of the application of this paragraph shall be secured by this Deed of Trust and shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Beneficiary until paid.  The obligations and liabilities of Trustor under this Paragraph 33 shall survive the termination, satisfaction, or assignment of this Deed of Trust and the exercise by Beneficiary of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Trust Property by foreclosure or a conveyance in lieu of foreclosure.

34. <u>Notices</u>. Any notice, report, demand or other instrument authorized or required to be given or furnished ("Notices") shall be in writing and shall be given as follows: (a) by hand delivery; (b) by deposit in the United States mail as first class certified mail, return receipt requested, postage paid; (c) by overnight nationwide commercial courier service; or (d) by telecopy transmission (other than for notices of default) with a confirmation copy to be delivered by duplicate notice in accordance with any of clauses (a)-(c) above, in each case, addressed to the party intended to receive the same at the following address(es):

Beneficiary:

UBS Warburg Real Estate Investments Inc.
1285 Avenue of the Americas, 11th Floor
New York, New York 10019
Attention: Robert Pettinato
Telecopier: (212) 713-2099

with copies to:

Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue
Los Angeles, California 90071
Attention: Mark S. Pecheck, Esq.
Telecopier: (213) 229-6588

and:

First Union National Bank
8739 Research Dr., URP4
Charlotte, North Carolina 28288-1075
Attention: David Tucker
Telecopier: (704) 593-7735
or any successor servicer of the Loan.

Trustor:

519 HCT 2002 LLC
1411 Harbor Bay Parkway, #1000
Alameda, Ca, 94502
Attn: James I. Hunter
Telecopier: (510) 522-2430

with a copy to:

Greenberg, Traurig
1200-17th Street, ste 2400
Denver, CO, 80202
Attn: Keith Pockross, Esq.
Telecopier: (303) 572-6540

Any party may change the address to which any such Notice is to be delivered, by furnishing ten (10) days written notice of such change to the other parties in accordance with the provisions of this Paragraph 34. Notices shall be deemed to have been given on the date they are actually received; <u>provided</u>, that the inability to deliver Notices because of a changed address of which no Notice was given, or rejection or refusal to accept any Notice offered for delivery, shall be deemed to be receipt of the Notice as of the date of such inability to deliver or rejection or

41

refusal to accept delivery. Notice for either party may be given by its respective counsel. Additionally, notice from Beneficiary may also be given by the Servicer.

35.   Non-Waiver. The failure of Beneficiary to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Deed of Trust. Any consent or approval by Beneficiary in any single instance shall not be deemed or construed to be Beneficiary's consent or approval in any like matter arising at a subsequent date.

36.   No Oral Change. This Deed of Trust, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Trustor or Beneficiary, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

37.   Liability. If Trustor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. Subject to the provisions hereof requiring Beneficiary's consent to any Transfer, this Deed of Trust shall be binding upon and inure to the benefit of Trustor and Beneficiary and their respective successors and assigns forever.

38.   Inapplicable Provisions. If any term, covenant or condition of the Note or this Deed of Trust is held to be invalid, illegal or unenforceable in any respect, the Note and this Deed of Trust shall be construed without such provision.

39.   Headings, Etc. The headings and captions of various paragraphs of this Deed of Trust are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

40.   Duplicate Originals. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

41.   Definitions. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Deed of Trust may be used interchangeably in singular or plural form and the word "Trustor" shall mean "each Trustor and any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word "Beneficiary" shall mean "Beneficiary and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Deed of Trust," the word "person" shall include an individual, corporation, limited liability company, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Trust Property" shall include any portion of the Trust Property and any interest therein and the words "attorneys' fees" shall include any and all attorneys' fees, paralegal and law clerk fees, including, without limitation, fees at the pre-trial, trial and appellate levels incurred or paid by Beneficiary in protecting its interest in the Trust Property and Collateral and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

42.    Homestead.. Trustor hereby waives and renounces all homestead and exemption rights provided by the Constitution and the laws of the United States and of any state, in and to the Trust Property as against the collection of the Debt, or any part hereof. .

43.    Assignments. Beneficiary shall have the right to assign or transfer its rights under this Deed of Trust without limitation. Any assignee or transferee shall be entitled to all the benefits afforded Beneficiary under this Deed of Trust.

44.    Waiver of Jury Trial.. TRUSTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS DEED OF TRUST, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY TRUSTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BENEFICIARY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY TRUSTOR.

45.    Miscellaneous.

(a)    Trustor covenants and agrees that during the Term; unless Beneficiary shall have previously consented in writing, (i) Trustor will take no action that would cause it to become an "employee benefit plan" as defined in 29 C.F.R. Section 2510.3-101, or "assets of a governmental plan" subject to regulation under the state statutes, and (ii) Trustor will not sell, assign or transfer the Trust Property, or any portion thereof or interest therein, to any transferee that does not execute and deliver to Beneficiary its written assumption of the obligations of this covenant. Trustor further covenants and agrees to protect, defend, indemnify and hold Beneficiary harmless from and against all loss, cost, damage and expense (including without limitation, all attorneys' fees and excise taxes, costs of correcting any prohibited transaction or obtaining an appropriate exemption) that Beneficiary may incur as a result of Trustor's breach of this covenant. This covenant and indemnity shall survive the extinguishment of the lien of this Deed of Trust by foreclosure or action in lieu thereof; furthermore, the foregoing indemnity shall supersede any limitations on Trustor's liability under any of the Loan Documents.

(b)    The Loan Documents contain the entire agreement between Trustor and Beneficiary relating to or connected with the Loan. Any other agreements relating to or connected with the Loan not expressly set forth in the Loan Documents are null and void and superseded in their entirety by the provisions of the Loan Documents.

(c)    Trustor represents and warrants to Beneficiary that there has not been committed by Trustor or any other person in occupancy of or involved with the operation or use of the Trust Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any

43

monies paid in performance of Trustor's obligations under the Note or under any of the other Loan Documents. Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act, omission or circumstance affording such right of forfeiture. In furtherance thereof, Trustor hereby indemnifies Beneficiary and agrees to defend and hold Beneficiary harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the representations and warranties set forth in this paragraph. Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Trustor or all or any part of the Trust Property under any federal or state law for which forfeiture of the Trust Property or any part thereof or of any monies paid in performance of Trustor's obligations under the Loan Documents is a potential result, shall, at the election of Beneficiary, constitute an Event of Default hereunder without notice or opportunity to cure.

(d)     Trustor acknowledges that, with respect to the Loan, Trustor is relying solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Beneficiary or any parent, subsidiary or affiliate of Beneficiary. Trustor acknowledges that Beneficiary engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of the Trustor or its affiliates. Trustor acknowledges that it is represented by competent counsel and has consulted counsel before executing the Loan Documents.

(e)     Trustor covenants and agrees to pay Beneficiary upon receipt of written notice from Beneficiary, all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements and the costs and expenses of any title insurance company, appraisers, engineers or surveyors) incurred by Beneficiary in connection with (i) the preparation, negotiation, execution and delivery of this Deed of Trust and the other Loan Documents; (ii) Trustor's performance of and compliance with Trustor's respective agreements and covenants contained in this Deed of Trust and the other Loan Documents on its part to be performed or complied with after the date hereof; (iii) Beneficiary's performance and compliance with all agreements and conditions contained in this Deed of Trust and the other Loan Documents on its part to be performed or complied with after the date hereof; (iv) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to this Deed of Trust and the other Loan Documents; and (v) the filing and recording fees and expenses, title insurance fees and expenses, and other similar expenses incurred in creating and perfecting the lien in favor of Beneficiary pursuant to this Deed of Trust and the other Loan Documents.

(f)     This Deed of Trust shall be governed by and construed in accordance with the laws of the State in which the Premises are located and the applicable laws of the United States of America. This Deed of Trust has been negotiated by parties knowledgeable in the matters contained herein, with the advice of counsel, and is to be construed and interpreted in absolute parity, and shall not be construed or interpreted against any party by reason of such party's preparation of the initial or any subsequent draft of the Loan Documents or this Deed of Trust.

(g)   This Deed of Trust may be executed in two or more counterparts, each of which shall constitute an original but all of which together shall constitute but one and the same instrument.

46.   Limitation on Trustor's Liability.  Anything contained in this Deed of Trust to the contrary notwithstanding, the liability of Trustor for the Debt and for the performance of all other agreements, covenants and obligations contained herein and in the Loan Documents shall be limited as set forth in Paragraph 11 of the Note.

47.   Defeasance.

(a)   Provided no Event of Default has occurred and is continuing, at any time after the date which (i) is two years after the "startup day," within the meaning of Section 860G(a)(9) of the Internal Revenue Code of 1986, as amended from time to time or any successor statute (the "Code"), of a "real estate mortgage investment conduit," within the meaning of Section 860D of the Code, that holds the Note or (ii) is four years after the date hereof, whichever shall first occur, and before the Maturity Date (as defined in the Note), Trustor may cause the release of the Trust Property from the lien of this Deed of Trust and the other Loan Documents upon the satisfaction of the following conditions:

(i)   not less than thirty (30) days prior written notice shall be given to Beneficiary specifying a date (the "Release Date") on which the Defeasance Collateral (as hereinafter defined) is to be delivered, such Release Date only to occur on a Payment Date (as defined in the Note);

(ii)   all accrued and unpaid interest and all other sums due under the Note and under the other Loan Documents up to the Release Date, including, without limitation, all costs and expenses incurred by Beneficiary or its agents in connection with such release (including, without limitation, the fees and expenses incurred by attorneys and accountants in connection with the review of the proposed Defeasance Collateral and the preparation of the Defeasance Security Agreement (as hereinafter defined) and related documentation), shall be paid in full on or prior to the Release Date; and

(iii)   Trustor shall deliver to Beneficiary on or prior to the Release Date:

(A)   an amount equal to that which is sufficient to purchase direct, non-callable obligations of the United States of America that provide for payments (1) on or prior to, but as close as possible to, all successive scheduled Payment Dates after the Release Date through the Maturity Date, and (2) in amounts equal to or greater than the Monthly Debt Service Payment Amount required under the Note through the Maturity Date together with payment in full of the unpaid principal balance of the Note as of the Maturity Date (the "Defeasance Collateral"), each of which shall be duly endorsed by the holder thereof as directed by Beneficiary or accompanied by a written instrument of transfer in form and substance wholly satisfactory to Beneficiary (including, without limitation, such instruments as may be required by the depository institution holding such securities to effectuate book-entry transfers and pledges through the book-entry facilities of such institution) in order to create a first priority security

45

interest therein in favor of the Beneficiary in conformity with all applicable state and federal laws governing granting of such security interests;

       (B)    a pledge and security agreement, in form and substance satisfactory to Beneficiary in its sole discretion, creating a first priority security interest in favor of Beneficiary in the Defeasance Collateral (the "Defeasance Security Agreement"), which shall provide, among other things, that any excess received by Beneficiary from the Defeasance Collateral over the amounts payable by Trustor hereunder shall be refunded to Trustor promptly after each Payment Date;

       (C)    a certificate of Trustor certifying that all of the requirements set forth in this Paragraph 47 have been satisfied;

       (D)    an opinion of counsel for Trustor in form and substance and delivered by counsel satisfactory to Beneficiary in its sole discretion stating, among other things, that (1) Beneficiary has a perfected first priority security interest in the Defeasance Collateral and that the Defeasance Security Agreement is enforceable against Trustor in accordance with its terms; and (2) that any REMIC Trust formed pursuant to a Securitization will not fail to maintain its status as a "real estate mortgage investment conduit" within the meaning of Section 860D of the Code as a result of such defeasance;

       (E)    Trustor shall deliver evidence in writing from the applicable Rating Agencies to the effect that the collateral substitution will not result in a downgrading, withdrawal or qualification of the respective ratings in effect immediately prior to such defeasance event for any securities issued in connection with the securitization which are then outstanding;

       (F)    a certificate from a firm of independent public accountants acceptable to Beneficiary certifying that the Defeasance Collateral is sufficient to satisfy the provisions of subparagraph A above; and

       (G)    such other certificates, documents or instruments as Beneficiary may reasonably require.

In connection with the conditions set forth in subparagraph (a)(iii) above, Trustor hereby appoints Beneficiary as its agent and attorney in fact for the purpose of using the amounts delivered pursuant to Paragraph (a)(iii)(A) above to purchase the Defeasance Collateral.

       (b)    Upon compliance with the requirements of this paragraph, the Trust Property shall be released from the lien of the this Deed of Trust and the other Loan Documents, and the Defeasance Collateral shall constitute the only collateral which shall secure the Note and all other obligations under the Loan Documents. Beneficiary will, at Trustor's expense, execute and deliver any agreements reasonably requested by Trustor to release the lien of this Deed of Trust from the Trust Property. Trustor, pursuant to the Defeasance Security Agreement, shall authorize and direct that the payments received from Defeasance Collateral be made directly to Beneficiary and applied to satisfy the obligations of the Trustor under the Note, including payment in full of the unpaid principal balance of the Note as of the Maturity Date.

(c)    Upon the release of the Trust Property in accordance with this paragraph, Trustor may, or at option of Beneficiary shall, assign all its obligations under the Note, together with the pledged Defeasance Collateral, to a successor entity designated by Trustor and approved by Beneficiary in its sole discretion. Such successor entity shall execute an assumption agreement in form and substance satisfactory to Beneficiary in its sole discretion pursuant to which it shall assume Trustor's obligations under the Note and the Defeasance Security Agreement. As conditions to such assignment and assumption, Trustor shall (i) deliver to Beneficiary an opinion of counsel in form and substance and delivered by counsel satisfactory to Beneficiary in its sole discretion stating, among other things, that such assumption agreement is enforceable against Trustor and such successor entity in accordance with its terms and that the Note, the Defeasance Security Agreement and the other Loan Documents, as so assumed, are enforceable against such successor entity in accordance with their respective terms, and (ii) pay all costs and expenses incurred by Beneficiary or its agents in connection with such assignment and assumption (including, without limitation, the review of the proposed transferee and the preparation of the assumption agreement and related documentation). Upon such assumption, Trustor shall be relieved of its obligations hereunder, under the other Loan Documents and under the Defeasance Security Agreement other than those obligations which are specifically intended to survive the termination, satisfaction or assignment of this Deed of Trust or the exercise of Beneficiary's rights and remedies hereunder.

(d)    Upon the release of the Trust Property in accordance with this paragraph, Trustor shall have no further right to prepay the Note pursuant to the other provisions of this paragraph or otherwise. In connection with the conditions set forth in Paragraph (a)(iii)(A) above, Trustor hereby appoints Beneficiary as its agent and attorney-in-fact for the purpose of purchasing the Defeasance Collateral with funds provided by the Trustor. Trustor shall pay any and all expenses incurred in the purchase of the Defeasance Collateral and any revenue, documentary stamp or intangible taxes or any other tax or charge due in connection with the transfer of the Note or otherwise required to accomplish the agreements of this paragraph.

48.    <u>Yield Maintenance</u>.  In the event of an Unscheduled Loan Prepayment (as defined below) where Borrower is required, pursuant to the provisions of Paragraph 3(c)(ii), Paragraph 8(d) or Paragraph 23(j), to pay a Proportionate Yield Maintenance Premium, the following terms shall have the following meanings:

(a)    "<u>Proportionate Yield Maintenance Premium</u>" shall mean the product of (i) the Yield Maintenance Premium multiplied by (ii) the Prepayment Percentage.

(b)    "<u>Yield Maintenance Premium</u>" shall mean, with respect to any Unscheduled Loan Prepayment (as defined below), an amount which, when added to the outstanding principal balance of the Note immediately prior to such Unscheduled Loan Prepayment, would be sufficient to purchase direct non-callable obligations of the United States of America which provide payments (i) on or prior to, but as close as possible to, all successive scheduled payment dates under the Note through the Maturity Date and (ii) in amounts equal to the Monthly Debt Service Payment Amount required under the Note through the Maturity Date together with the outstanding principal balance of the Note as of the Maturity Date. In no event shall the Yield Maintenance Premium be less than zero.

47

(c)    "Prepayment Percentage" shall mean, with respect to any Unscheduled Loan Prepayment, the percentage of the then current outstanding principal balance of the Note that is being prepaid.

(d)    "Unscheduled Loan Prepayment" shall mean any principal prepayment of the Note prior to the Maturity Date other than the portion of each Monthly Debt Service Payment Amount (as defined in the Note) which comprises a principal payment. An Unscheduled Loan Prepayment shall include, without limitation, (i) a paydown of the Loan (in whole or in part) prior to the Maturity Date as a result of an Insured Casualty pursuant to Paragraph 3(c)(ii) of this Deed of Trust if an Event of Default, or an event which, with notice and/or the passage of time or both, would constitute an Event of Default, has occurred (but not otherwise), (ii) a paydown of the Loan (in whole or in part) prior to the Maturity Date as a result of a Condemnation pursuant to Paragraph 8(d) of this Deed of Trust if an Event of Default, or an event which, with notice and/or the passage of time or both, would constitute an Event of Default, has occurred (but not otherwise) and (iii) a paydown of the Loan (in whole or in part) in connection with the exercise by Beneficiary of any of its remedies under this Deed of Trust upon the occurrence of an Event of Default, including, without limitation, a foreclosure sale of the Trust Property. Notwithstanding anything in this Section to the contrary, an Unscheduled Loan Prepayment shall <u>not</u> include the voluntary prepayment of the entire balance owed under the Note, including accrued interests, after the date that is three (3) months immediately preceding the Maturity Date (hereinafter, the "Optional Prepayment Date"), provided that Trustor give as least thirty (30) days' prior written notice to Beneficiary.

49.    <u>Cash Management Agreement</u>. On or before the date hereof, Trustor covenants and agrees to enter into one or more servicing account agreements, lockbox servicing agreements and/or cash management agreements acceptable to Beneficiary among Trustor, Manager, (as defined below) Beneficiary and, as applicable, one or more financial institutions (together with any modification, amendment, substitution or replacement thereof, hereinafter collectively referred to as the "Cash Management Agreement"). The Cash Management Agreement shall provide, among other things (I) when and in what manner all Rents and other sums collected from, or arising with respect to, the Trust Property shall be deposited directly into a clearing account established in connection with such Cash Management Agreement, and (ii) the order and priority of the application of such funds.

50.    <u>Annual Budgets</u>. For the calendar year commencing on January 1, 2007 for each calendar year thereafter, Trustor shall submit to Beneficiary for Beneficiary's written approval an annual budget (an "Annual Budget") not later than sixty (60) days prior to the commencement of such calendar year, in form satisfactory to Beneficiary setting forth in reasonable detail budgeted monthly operating income and monthly operating capital and other expenses for the Trust Property. Each Annual Budget shall contain, among other things, limitations on management fees, third party service fees, and other expenses as Beneficiary may reasonably require. Beneficiary shall have the right to approve such Annual Budget and in the event that Beneficiary objects to the proposed Annual Budget submitted by Trustor, Beneficiary shall advise Trustor of such objections within fifteen (15) days after receipt thereof (and deliver to Trustor a reasonably detailed description of such objections) and Trustor shall, within ten (10) days after receipt of notice of any such objections revise such Annual Budget and resubmit the same to Beneficiary. Beneficiary shall advise Trustor of any objections to such revised Annual

48

Budget within ten (10) days after receipt thereof (and deliver to Trustor a reasonably detailed description of such objections) and Trustor shall revise the same in accordance with the process described in this Paragraph 50 until Beneficiary approves an Annual Budget; provided, however, that if Beneficiary shall not advise Trustor of its objections to any proposed Annual Budget within the applicable time period set forth in this paragraph, then such proposed Annual Budget shall be deemed approved by Beneficiary. Each such Annual Budget approved by Beneficiary in accordance with terms hereof shall hereinafter be referred to as an "Approved Annual Budget". Until such time that Beneficiary approves a proposed Annual Budget, the most recently Approved Annual Budget shall apply; provided that, such Approved Annual Budget shall be adjusted to reflect actual increases in real estate taxes, insurance premiums and utilities expenses.

     51.    <u>Sale of Notes and Securitization.</u>

        (a)    Trustor acknowledges that Beneficiary and its successors and assigns may (i) sell this Deed of Trust, the Note and other Loan Documents to one or more investors as a whole loan, (ii) participate the Loan secured by this Deed of Trust to one or more investors, (iii) deposit this Deed of Trust, the Note and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets, or (iv) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (i) through (iv) are hereinafter each referred to as "Secondary Market Transaction" or "Securitization"). Trustor shall cooperate with Beneficiary in effecting any such Secondary Market Transaction and shall cooperate to implement all requirements imposed by any Rating Agency involved in any Secondary Market Transaction. Trustor, however, shall not be required to modify any documents evidencing or securing the Loan which would modify (A) the interest rate payable under the Note, (B) the stated maturity of the Note, (C) the amortization of principal of the Note, (D) the non-recourse provisions of the Loan or (E) any other material economic term of the Loan. Trustor shall provide such information, legal opinions and documents relating to Trustor, Guarantor, if any, the Trust Property and any tenants of the Improvements as Beneficiary may reasonably request in connection with such Secondary Market Transaction. In addition, Trustor shall make available to Beneficiary all information concerning its business and operations that Beneficiary may reasonably request. Beneficiary shall be permitted to share all such information with the investment banking firms, Rating Agencies, accounting firms, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the applicable Secondary Market Transaction. It is understood that the information provided by Trustor to Beneficiary may ultimately be incorporated into the offering documents for the Secondary Market Transaction and thus various investors may also see some or all of the information. Beneficiary and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, Trustor and Trustor indemnifies Beneficiary as to any losses, claims, damages or liabilities that arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in such information or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated in such information or necessary in order to make the statements in such information, or in light of the circumstances under which they were made, not misleading. Beneficiary may publicize the existence of the Loan in connection with its marketing for a Secondary Market Transaction or otherwise as part of its business development.

(b)    In the event that the provisions of this Deed of Trust or any Loan Documents require the receipt of written confirmation from each Rating Agency with respect to the ratings on the Securities, or, in accordance with the terms of the transaction documents relating to a Secondary Market Transaction, such a rating confirmation is required in order for the consent of the Beneficiary to be given, the Trustor shall pay all of the costs and expenses of the Beneficiary, Servicer and each Rating Agency in connection therewith, and, if applicable, shall pay any fees imposed by any Rating Agency as a condition to the delivery of such confirmation.]

52.    Intentionally omitted.

53.    Intentionally omitted.

54.    <u>Servicer</u>.  At the option of Beneficiary, the Loan may be serviced by a servicer/trustee (the "<u>Servicer</u>") selected by Beneficiary and Beneficiary may delegate all or any portion of its responsibilities under this Deed of Trust and the other Loan Documents to the Servicer pursuant to a servicing agreement (the "<u>Servicing Agreement</u>") between Beneficiary and Servicer.  Trustor shall be responsible for any reasonable set-up fees or any other initial costs relating to or arising under the Servicing Agreement.

55.    <u>Management of the Trust Property</u>.  Trustor shall maintain the Management Agreement, or any subsequent agreement relating to the operation and management of the Trust Property approved by Beneficiary, in full force and effect and timely perform all of Trustor's obligations thereunder and enforce performance of all obligations of the Manager thereunder, and not permit the termination or amendment of such Management Agreement, or any subsequent agreement relating to the operation and management of the Trust Property approved by Beneficiary, unless the prior written consent of Beneficiary is first obtained.  Upon the occurrence of an Event of Default or an event of default under the Management Agreement by the Manager, Trustor at Beneficiary's request made at any time while such Event of Default or event of default under the Management Agreement continues, shall terminate the Management Agreement, or any subsequent agreement relating to the operation and management of the Trust Property approved by Beneficiary and replace the Manager with a manager approved by Beneficiary.  In addition, if within forty-five (45) days before the end of each calendar quarter Trustor does not provide evidence of the achievement of a Debt Service Coverage Ratio of not less than 1.10 (the "<u>Required DSCR</u>") Trustor, at Beneficiary's request made at any time after such Required DSCR is not maintained, shall terminate the Management Agreement, or any subsequent agreement relating to the operation and management of the Trust Property approved by Beneficiary, and replace the Manager with manager approved by Beneficiary or if no Management Agreement is then in place enter into a Management Agreement acceptable to Beneficiary with a manager approved by Beneficiary.

56.    <u>Concerning the Trustee</u>.

(a)    <u>No Required Action</u>.  Trustee shall not be required to take any action toward the execution and enforcement of the trust hereby created or to institute, appear in, or defend any action, suit, or other proceeding in connection therewith where, in his opinion, such action would be likely to involve him in expense or liability, unless requested so to do by a

50

written instrument signed by Beneficiary and, if Trustee so requests, unless Trustee is tendered security and indemnity satisfactory to Trustee against any and all cost, expense, and liability arising therefrom. Trustee shall not be responsible for the execution, acknowledgment, or validity of the Loan Documents, or for the proper authorization thereof, or for the sufficiency of the lien and security interest purported to be created hereby, and Trustee makes no representation in respect thereof or in respect of the rights, remedies, and recourse of Beneficiary.

(b) _Certain Rights_. With the approval of Beneficiary, Trustee shall have the right to take any and all of the following actions: (i) to select, employ, and consult with counsel (who may be, but need not be, counsel for Beneficiary) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his agents or attorneys, (iii) to select and employ, in and about the execution of his duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith), and (iv) any and all other lawful action that Beneficiary may instruct Trustee to take to protect or enforce Beneficiary's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Trust Property for debts contracted for or liability or damages incurred in the management or operation of the Trust Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Grantor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

(c) _Retention of Money_. All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law), and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

(d) _Successor Trustees_. Trustee may resign by the giving of notice of such resignation in writing or verbally to Beneficiary. If Trustee shall die, resign, or become disqualified from acting in the execution of this trust, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Beneficiary shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights,

51

powers, and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Beneficiary, and if such Beneficiary be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Grantor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Deed of Trust or applicable law.

      (e)    <u>Perfection of Appointment</u>. Should any deed, conveyance, or instrument of any nature be required from Grantor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to the Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by the Trustee or substitute Trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Grantor.

      (f)    <u>Succession Instruments</u>. Any substitute Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the substitute Trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute Trustee so appointed in the Trustee's place.

      (g)    <u>No Representation by Trustee or Beneficiary</u>. By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Beneficiary pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, neither Trustee nor Beneficiary shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness, or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Beneficiary.

[SIGNATURE APPEARS ON FOLLOWING PAGE.]

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Leases and Rents and Security Agreement the day and year first above written.

519 HCT 2002 LLC,
a California limited liability company

By:  HCT (519 17th Street), Inc.

By: _____
Name: James I. Hunter
Title: President

53

[FORM OF ACKNOWLEDGMENT]

STATE OF CALIFORNIA         )
                           )  ss.
COUNTY OF Alameda ——       )


   On 14th November —, 2002, before me, Linda McAloon Judge, Notary public
(here insert name and title of officer), personally appeared James I. Hurd ——
known to me (or proved to me on the basis of satisfactory evidence) to be the person whose
name is subscribed to the within instrument and acknowledged to me that he executed the same
in his authorized capacity, and that by his signature on the instrument the person, or the entity
upon behalf of which the person acted, executed the instrument.

   Witness my hand and official seal.


[Seal]

                                    Linda McAloon Judge
                                    Notary Public


LINDA MC ALOON JUDGE
Commission # 1308567
Notary Public - California
Alameda County
My Comm. Expires Jun 10, 2005

Deed of Trust 110502
11/6/2002 11:36 AM

## EXHIBIT A

## LEGAL DESCRIPTION

That certain real property situated in the State of California, County of Alameda, described as follows:

CITY OF OAKLAND

COMMENCING AT A POINT ON THE SOUTHERN LINE OF SEVENTEENTH STREET; DISTANT THEREON 100 FEET WESTERLY FROM THE WESTERLY LINE OF TELEGRAPH AVENUE; AND RUNNING THENCE WESTERLY ALONG SAID SOUTHERLY LINE OF SEVENTEENTH STREET, 100 FEET; THENCE AT RIGHT ANGLES SOUTHERLY, 105 FEET; THENCE AT RIGHT ANGLES EASTERLY, 100 FEET; AND THENCE AT RIGHT ANGLES NORTHERLY, 105 FEET TO THE POINT OF COMMENCEMENT.

BEING LOTS 9, 11, 13 AND 15, BLOCK "B", MAP OF A SURVEY MADE FOR G.C. POTTER, MARCH 28, FILED APRIL 23, 1877, MAP BOOK 2, PAGE 14, ALAMEDA COUNTY RECORDS.

Deed of Trust 110502
11/6/2002 11:46 AM

Exhibit A

EXHIBIT B

## DEFERRED MAINTENANCE ITEMS

| Item | Amount |
|------|--------|
| Painting | $28,000 |
| Skylight Leak | $3,000 |
| HVAC Study | $8,500 |
| Total | $39,500 |
| | |
| Multiplier | 125% |
| Deferred Maintenance Escrow Fund | $49,375 |