# EXHIBIT 3

RECORDING REQUESTED BY
Chicago Title Company

WHEN RECORDED MAIL TO:

Gibson, Dunn & Crutcher LLP
333 S Grand Avenue
Los Angeles, Ca. 90071
Att: Mark S. Pecheck, Esq.

pcor
B14
13
ft

2002519611 11/13/2002 08:30 AM
OFFICIAL RECORDS OF   RECORDING FEE: 43.00
ALAMEDA COUNTY
PATRICK O'CONNELL

13 PGS

THIS SPACE FOR RECORDER'S USE ONLY

Assignment of Leases and Rents     Concurrently here with

**EXHIBIT 3**

B. 912271-46

519 HCT 2002 LLC

(Assignor)

to

UBS WARBURG REAL ESTATE INVESTMENTS INC.,

a Delaware corporation

(Assignee)

ASSIGNMENT OF LEASES AND RENTS

Dated: As of November 12, 2002

Property Location: 519 Seventeenth Street
Oakland, California

recorded 11/13/02

WHEN RECORDED, RETURN TO:
Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue
Los Angeles, California 90071
Attention: Mark S. Pecheck, Esq.
Reference: 93485.00030

LA_10640413_3
November 11, 2002 (8:52AM)

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of November 1\_, 2002, by 519 HCT 2002 LLC, a California limited liability company, having its principal place of business at 1411 Harbor Bay Parkway, #1000, Alameda, CA, 94502 ("Assignor") to UBS WARBURG REAL ESTATE INVESTMENTS INC., a Delaware corporation, having its principal place of business at 1285 Avenue of the Americas, New York, New York 10019 ("Assignee").

WITNESSETH:

THAT Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and absolutely and unconditionally assigns to Assignee the entire lessor's interest in and to all current and future leases and other agreements affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Exhibit A annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (hereinafter collectively referred to as the "Trust Property");

TOGETHER WITH all other leases and other agreements affecting the use, enjoyment or occupancy of any part of the Trust Property now or hereafter made affecting the Trust Property or any portion thereof, together with any extensions or renewals of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment;

The leases and other agreements described above together with all other present and future leases and present and future agreements and any extension or renewal of the same are hereinafter collectively referred to as the "Leases";

TOGETHER WITH all accounts, deposits, rents, income, issues, revenues, receipts, insurance proceeds and profits arising from the Leases and renewals thereof and together with all rents, income, issues and profits (including, but not limited to, all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Trust Property, or the sale, lease, sublease, license, concession or other grant of right to use or occupy any portion thereof, vending machine proceeds, and any compensation received for the rendering of services by Assignor (hereinafter collectively referred to as the "Rents").

THIS ASSIGNMENT is made in consideration of that certain mortgage loan made by Assignee to Assignor evidenced by that certain Mortgage Note made by Assignor to Assignee, dated the date hereof, in the principal sum of $7,200,000.00 (the "Note"), and secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture

LA\_10640413\_3
November 11, 2002 (8:52AM)

Filing given by Assignor, as trustor, for the benefit of Assignee, as beneficiary, dated the date hereof covering the Trust Property and intended to be duly recorded (the "Security Instrument").

The principal sum, interest and all other sums due and payable under the Note and Security Instrument are hereinafter collectively referred to as the "Debt". This Assignment, the Note, the Security Instrument and any other documents now or hereafter executed by Assignor and/or others and by or in favor of Assignee which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note and the Security Instrument are hereinafter referred to as the "Loan Documents".

ASSIGNOR WARRANTS that (A) Assignor is the sole owner of the entire lessor's interest in the Leases; (B) the Leases are valid, enforceable and in full force and effect and have not been altered, modified or amended in any manner whatsoever; except as previously disclosed in writing to Assignee, (C) none of the Leases or Rents have been assigned or otherwise pledged or hypothecated; (D) none of the Rents have been collected for more than one (1) month in advance; (E) Assignor has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Assignor or the Trust Property; (F) the premises demised under the Leases have been completed and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; (G) neither Assignor nor any tenant under any Lease is in default under any of the terms, covenants or provisions of the Lease, and Assignor knows of no event which, but for the passage of time or the giving of notice or both, would constitute an event of default under any Lease; (H) no tenant under any Lease has an option to purchase the Premises or any portion thereof; and (I) there exist no offsets or defenses to the payment of any portion of the Rents.

ASSIGNOR COVENANTS with Assignee that Assignor (A) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (B) shall promptly send copies to Assignee of all notices of default which Assignor shall send or receive thereunder; (C) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed and performed, short of termination thereof; (D) shall not collect any of the Rents more than one (1) month in advance; (E) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; and (F) shall deliver to Assignee, upon request, tenant estoppel certificates from each commercial tenant at the Trust Property in form and substance reasonably satisfactory to Assignee, provided that Assignor shall not be required to deliver such certificates more frequently than two times in any calendar year, and (G) shall execute and deliver at the request of Assignee all such further assurances, confirmations and assignments in connection with the Trust Property as Assignee shall from time to time require.

Assignment of Leases & Rents
November 4, 2002 (11:44AM)

ASSIGNOR FURTHER COVENANTS with Assignee that, except to the extent Assignor is acting in the ordinary course of business and in a commercially reasonable manner, Assignor (A) shall not, alter, modify or change the terms of the Leases or any guarantee of any of the Leases in any material respect without the prior written consent of Assignee; (B) shall not convey or transfer or suffer or permit a conveyance or transfer of the Trust Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, tenants under the Leases; (C) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Assignee; and (D) shall not cancel or terminate the Leases or accept a surrender thereof, except if a tenant is in default thereunder; provided, however, that any Lease may be canceled if at the time of the cancellation thereof a new Lease is entered into on substantially the same terms or more favorable terms as the canceled Lease.

ASSIGNOR FURTHER COVENANTS with Assignee that (A) all Leases executed after the date hereof shall be written on the standard form of lease which has been approved by Assignee; (B) no material changes may be made to the Assignee approved standard lease without the prior written consent of Assignee; (C) all Leases executed after the date hereof shall provide that they are subordinate to the Security Instrument and that the tenant agrees to attorn to Assignee; (D) unless otherwise approved by Assignee, each retail Lease shall contain a provision requiring continuous operation of tenant's business on the premises, and shall contain a prohibition against tenant operating a competing business at or near the Trust Property; (E) none of the Leases shall contain any option to purchase, any right of first refusal to lease or purchase, any right to terminate the lease term (except in the event of the destruction of all or substantially all of the Trust Property), any non-disturbance or similar recognition agreement, any requirement that the Assignor rebuild the Trust Property in connection with a casualty or condemnation of any portion of the Trust Property, or any other similar provisions which adversely affect the Trust Property or which might adversely affect the rights of any holder of the Loan, without the prior written consent of Assignee, and (F) each tenant shall conduct business only in that portion of the Trust Property covered by its Lease. Upon request, Assignor shall furnish Assignee with executed copies of all Leases.

ASSIGNOR FURTHER COVENANTS with Assignee that Assignor may enter into new Leases and proposed renewals or extensions of existing Leases without the prior written consent of Assignee if such proposed Lease or extension: (i) covers less than ten percent (10%) of the gross leaseable area of the Trust Property, or accounts for less than ten percent (10%) of the total gross rental revenues of the Trust Property; (ii) has an initial term of not less than three (3) years or greater than ten (10) years; (iii) provides for rental rates comparable to existing local market rates and is an arms-length transaction; (iv) does not contain any options for renewal or expansion by the tenant thereunder at rental rates which are either below comparable market levels or less than the rental rates paid by the tenant during the initial lease term; (v) is to a tenant which is experienced, creditworthy and reputable; and (vi) complies with the requirements of the preceding paragraph. Assignor may enter into a proposed lease which does not satisfy all of the

Assignment of Leases & Rents
November 4, 2002 (11:44AM)

conditions set forth in clauses (i) through (vi) immediately above, only with the prior written consent of Assignee, such consent not to be unreasonably withheld or delayed. Assignor shall deliver to Assignee true, complete and correct copies of any proposed Lease which requires Assignee's prior written consent hereunder and Assignee shall approve or disapprove such proposed Lease within ten (10) business days after its receipt of same. In the event Assignee does not disapprove the proposed Lease within such 10 business day period, then the proposed Lease shall be deemed approved, provided that such deemed approval shall only be effective if the envelope in which the proposed Lease is delivered to Assignee and the transmittal memo accompanying the Lease both have written the following notice in bold-face capital letters in 14-point font or larger: "RESPONSE REQUIRED WITHIN 10 BUSINESS DAYS OF RECEIPT. THIS ENVELOPE CONTAINS A PROPOSED LEASE WHICH, IN ACCORDANCE WITH PARAGRAPH 9(d) OF THAT CERTAIN DEED OF TRUST ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING MADE AS OF OCTOBER 31, 2002, by 519 HCT 2002 LLC, TO CHICAGO TITLE INSURANCE COMPANY, AS TRUSTEE, FOR THE BENEFIT OF UBS WARBURG REAL ESTATE INVESTMENTS INC, IS SUBJECT TO APPROVAL BY UBS WARBURG REAL ESTATE INVESTMENTS INC. BUT SHALL BE DEEMED APPROVED IF NOT DISAPPROVED IN WRITING PRIOR TO THE EXPIRATION OF 10 BUSINESS DAYS AFTER RECEIPT." Assignor expressly understands that any and all new or proposed Leases are included in the definition of "Lease" or "Leases" as such terms may be used throughout this Assignment.

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

1. <u>Present Assignment</u>. Assignor does hereby absolutely and unconditionally assign to Assignee Assignor's right, title and interest in all current and future Leases and Rents, it being intended by Assignor that this assignment constitutes a present, absolute and unconditional assignment and not an assignment for additional security only. Such assignment to Assignee shall not be construed to bind Assignee to the performance of any of the covenants, conditions, or provisions contained in any such Lease or otherwise to impose any obligation upon Assignee. Assignor agrees to execute and deliver to Assignee such additional instruments, in form and substance satisfactory to Assignee, as may hereafter be requested by Assignee to further evidence and confirm said assignment. Nevertheless, subject to the terms of this paragraph, Assignee grants to Assignor a revocable license to operate and manage the Trust Property and to collect the Rents. Assignor shall hold the Rents, or a portion thereof, sufficient to discharge all current sums on the Debt for use in payment of such sums. Upon an Event of Default (as defined in the Security Instrument), the license granted to Assignor herein shall automatically be revoked by Assignee and Assignee shall immediately be entitled to receive and apply all Rents, whether or not Assignee enters upon and takes control of the Trust Property. Assignee is hereby granted and assigned by Assignor the right, at its option, upon the revocation of the license granted herein to enter upon the Trust Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Debt in such priority and proportion as Assignee, in its discretion,

Assignment of Leases & Rents
November 4, 2002 (11:44AM)

4

shall deem proper.

2. <u>Remedies of Assignee</u>. Upon or at any time after an Event of Default, Assignee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Trust Property and have, hold, manage, lease and operate the Trust Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Trust Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid, with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and may apply the Rents to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Trust Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Trust Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Trust Property; and (b) the Debt, together with all costs and attorneys' fees. In addition to the rights which Assignee may have herein, upon the occurrence of an Event of Default, Assignee, at its option, may either require Assignor to pay monthly in advance to Assignee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Trust Property as may be in possession of Assignor or require Assignor to vacate and surrender possession of the Trust Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise. Additionally, Assignee shall have the right to establish a lock box for the deposit of all Rents and other receivables of Assignor relating to the Trust Property. For purposes of paragraphs 1 and 2 hereof, Assignor grants to Assignee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Assignee for the proper management and preservation of the Trust Property. The exercise by Assignee of the option granted it in this paragraph and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Security Instrument, the Leases, this Assignment or the other Loan Documents.

3. <u>No Liability of Assignee</u>. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Trust Property after an Event of Default or from any other act or omission of Assignee in managing the Trust Property after an Event of Default. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or

November 4, 2002 (11:44AM)

damage which may or might be incurred under the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, the amount thereof, including costs, expenses and attorneys' fees, shall be secured hereby and by the Security Instrument and the other Loan Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor to do so Assignee may, at its option, declare all sums secured hereby, the Note, the Security Instrument and the other Loan Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Trust Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Trust Property by the tenants or any other parties, or for any dangerous or defective condition of the Trust Property, including, without limitation, the presence of any Hazardous Substances (as defined in the Security Instrument), or for any negligence in the management, upkeep, repair or control of the Trust Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

4. <u>Notice to Tenants</u>. Assignor hereby authorizes and directs the tenants named in the Leases or any other or future tenants or occupants of the Trust Property upon receipt from Assignee of written notice to the effect that the Assignee is then the holder of the Note and that a default exists thereunder or under this Assignment, the Note, the Security Instrument or the other Loan Documents to pay over to Assignee all Rents and to continue so to do until otherwise notified by Assignee.

5. <u>Other Security</u>. Assignee may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

6. <u>Other Remedies</u>. Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note, the Security Instrument or the other Loan Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof. The right of Assignee to collect the Debt and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

7. <u>No Mortgagee in Possession</u>. Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Trust Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being

November 4, 2002 (11:44AM)

expressly waived and released by Assignor.

8. <u>Conflict of Terms</u>. In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

9. <u>No Oral Change</u>. This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

10. <u>Certain Definitions</u>. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeable in singular or plural form and the word "Assignor" shall mean each Assignor and any subsequent owner or owners of the Trust Property or any part thereof or any interest therein, the word "Assignee" shall mean Assignee and any subsequent holder of the Note, the word "Note" shall mean the Note and any other evidence of indebtedness secured by the Security Instrument, the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Trust Property" shall include any portion of the Trust Property and any interest therein; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms; and the singular form of nouns and pronouns shall include the plural and vice versa.

11. <u>Non-Waiver</u>. The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (i) failure of Assignee to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the other Loan Documents, (ii) the release regardless of consideration, of the whole or any part of the Trust Property, or (iii) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the other Loan Documents. Assignee may resort for the payment of the Debt to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

12. <u>Inapplicable Provisions</u>. If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed

November 4, 2002 (11:44AM)

without such provision.

13. <u>Duplicate Originals</u>. This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

14. <u>Governing Law</u>. This Assignment shall be governed and construed in accordance with the laws of the State in which the Trust Property is located.

15. <u>Termination of Assignment</u>. Upon payment in full of the Debt and the delivery and recording of a satisfaction, release, reconveyance or discharge of the Security Instrument duly executed by Assignee, this Assignment shall become and be void and of no effect.

16. <u>Counterparts</u>. This Assignment may be executed in two or more counterparts, each of which shall constitute an original but all of which together shall constitute but one and the same instrument.

17. <u>WAIVER OF JURY TRIAL</u>. ASSIGNOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS ASSIGNMENT, THE SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY ASSIGNOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO TRIAL BY JURY WOULD OTHERWISE ACCRUE. ASSIGNEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY ASSIGNOR.

THIS ASSIGNMENT shall inure to the benefit of Assignee and any subsequent holder of the Note and shall be binding upon Assignor, and Assignor's heirs, executors, administrators, successors and assigns and any subsequent owner of the Trust Property.

[SIGNATURE APPEARS ON FOLLOWING PAGE.]

November 4, 2002 (11:44AM)

Assignor has executed this Assignment of Leases and Rents the day and year first above written.

ASSIGNOR:

519 HCT 2002 LLC,
a California limited liability company

By: HCT (519 17th Street), Inc.

By: *(signature)*
Name: James L. Hunter
Title: President

November 4, 2002 (11:44AM)

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF Alameda      )

On 4th November ———, 2002, before me, Linda McAloon Judge, Notary public (here insert name and title of officer), personally appeared James T. Hunter, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

[Seal]

_____
Notary Public



LINDA MC ALOON JUDGE
Commission # 1308587
Notary Public - California
Alameda County
My Comm. Expires Jun 10, 2005

November 4, 2002 (11:44AM)

# EXHIBIT A

## LEGAL DESCRIPTION

That certain real property situated in the State of California, County of Alameda, described as follows:

CITY OF OAKLAND

COMMENCING AT A POINT ON THE SOUTHERN LINE OF SEVENTEENTH STREET; DISTANT THEREON 100 FEET WESTERLY FROM THE WESTERLY LINE OF TELEGRAPH AVENUE; AND RUNNING THENCE WESTERLY ALONG SAID SOUTHERLY LINE OF SEVENTEENTH STREET, 100 FEET; THENCE AT RIGHT ANGLES SOUTHERLY, 105 FEET; THENCE AT RIGHT ANGLES EASTERLY, 100 FEET; AND THENCE AT RIGHT ANGLES NORTHERLY, 105 FEET TO THE POINT OF COMMENCEMENT.

BEING LOTS 9, 11, 13 AND 15, BLOCK "B", MAP OF A SURVEY MADE FOR G.C. POTTER, MARCH 28, FILED APRIL 23, 1877, MAP BOOK 2, PAGE 14, ALAMEDA COUNTY RECORDS.

November 4, 2002 (11:44AM)