# EXHIBIT 4

# INDEMNITY AND GUARANTY AGREEMENT

THIS INDEMNITY AND GUARANTY AGREEMENT (this "Agreement"), made as of the 12th day of November, 2002, by JAMES I. HUNTER, whose address is 1411 Harbor Bay Parkway #1000, Alameda, CA 94502, GIJSBERT VAN MAREN (aka Bernie Van Maren) ("Van Maren"), whose address is #202-45793 Luckakuck Way, Chilliwack, British Columbia, V2R 5P9, and JOHN MACKAY ("Mackay"), whose address is 21st Floor, 650 West Georgia Street, Vancouver, British Columbia, V6B 4N7 (collectively "Indemnitor"), in favor of UBS WARBURG REAL ESTATE INVESTMENTS INC., a Delaware corporation, whose address is 1285 Avenue of the Americas, 11th Floor, New York, New York 10019 (together with its successors and assigns "Holder").

## WITNESSETH:

WHEREAS, 519 HCT 2002 LLC ("Borrower"), has obtained a loan in the principal amount of Seven Million Two Hundred Thousand and 00/100 ($7,200,000.00) Dollars (the "Loan") from Holder; and

WHEREAS, the Loan is evidenced by a Deed of Trust Note dated of even date herewith (the "Note"), executed by Borrower and payable to the order of Holder in the stated principal amount of Seven Million Two Hundred Thousand and 00/100 ($7,200,000.00) Dollars and is secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated of even date herewith (the "Security Instrument") from Borrower, as trustor, for the benefit of Holder, as beneficiary, encumbering that certain real property situated in the City of Oakland, County of Alameda, State of California, as more particularly described on Exhibit A attached hereto and incorporated herein by this reference, together with the buildings, structures and other improvements now or hereafter located thereon (said real property, buildings, structures and other improvements being hereinafter collectively referred to as the "Property") and by other documents and instruments (the Note, the Security Instrument and such other documents and instruments, as the same may from time to time be amended, consolidated, renewed or replaced, being collectively referred to herein as the "Loan Documents") and

WHEREAS, as a condition to making the Loan to Borrower, Holder has required that Indemnitor indemnify Holder from and against and guarantee payment to Holder of those items for which Borrower is personally liable and for which Holder has recourse against Borrower under the terms of the Note and the Security Instrument; and

WHEREAS, the extension of the Loan to Borrower is of substantial benefit to Indemnitor and, therefore, Indemnitor desires to indemnify Holder from and against and guarantee payment to Holder of those items for which Borrower is personally liable and for which Holder has recourse against Borrower under the terms of the Note and the Security Instrument.

NOW, THEREFORE, to induce Holder to extend the Loan to Borrower and in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Indemnitor hereby covenants and agrees for the benefit of Holder, as follows:

**EXHIBIT 4**

1.  **Indemnity and Guaranty.** Indemnitor hereby assumes liability as a primary obligor for, hereby unconditionally guarantees payment to Holder of, hereby agrees to pay, protect, defend and save Holder harmless from and against, and hereby indemnifies Holder from and against any and all liabilities, obligations, losses, damages (including those resulting from the diminution in value of the Property as a result of subsection (D) below), costs and expenses (including, without limitation, attorneys' fees), causes of action, suits, claims, demands and judgments of any nature or description whatsoever (collectively, "Costs") which may at any time be imposed upon, incurred by or awarded against Holder as a result of:

    (a) fraud or intentional misrepresentation or failure to disclose a material fact by Borrower, any of Borrower's officers, agents, attorneys, principals, general partners, managing members or employees, or any guarantor or indemnitor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Borrower's obligations under the Loan Documents;

    (b) the gross negligence or willful misconduct of Borrower;

    (c) physical waste of the Property;

    (d) the breach of any representation, warranty, covenant or indemnification provision in the Loan Documents concerning environmental laws, hazardous substances or asbestos;

    (e) the removal or disposal of any portion of the Property after an Event of Default;

    (f) the misapplication or conversion by Borrower of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (C) any Rents following an Event of Default, or during a Sweep Period (as defined in the Cash Management Agreement), or (D) any Rents paid more than one month in advance;

    (g) the failure to pay charges for labor or materials or taxes or other charges that can create liens on any portion of the Property;

    (h) all tenant security deposits or other refundable deposits paid to or held by Borrower or any other person or entity in connection with the Leases (as defined in the Security Instrument) which are not applied in accordance with the terms of the applicable Leases; and

    (i) the failure to obtain and maintain the fully paid for Policies (as defined in the Security Instrument) in accordance with Paragraph 2 of the Security Instrument.

    Notwithstanding anything to the contrary in any of the Loan Documents, (i) Holder shall not be deemed to have waived any right which Holder may have under Section 506(a), 506(b), 1111(B) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt secured by the Security Instrument or to require that all collateral shall continue to secure all of the Debt owing to Holder in accordance with the Loan Documents, and (ii) Indemnitor shall be liable for the full amount of the Debt in the event that

(A) the first full monthly payment of principal and interest on the Note is not paid when due; (B) Borrower fails to maintain its status as a single purpose entity, as required by, and in accordance with, the Security Instrument; (C) Borrower fails to obtain Holder's prior written consent to any subordinate financing or other voluntary lien encumbering the Property; (D) Borrower fails to obtain Holder's prior written consent to any assignment, transfer, or conveyance of the Property or any interest therein as required by the Security Instrument, or any breach or default by Borrower of Section 13 of the Security Instrument, (E) a receiver, liquidator or trustee of Borrower or Indemnitor shall be appointed or if Borrower or Indemnitor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by, consented to, or acquiesced in by, Borrower or Indemnitor or if any proceeding for the dissolution or liquidation of Borrower or Indemnitor shall be instituted by Borrower or Indemnitor, or (F) Indemnitor (or any person comprising Indemnitor), Borrower or any Related Party of any of the foregoing shall, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Holder under or in connection with this Agreement, the Note, the Security Instrument or any of the other Loan Documents, asserts a defense, seeks judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding any defense against Holder or any right in connection with any security for the Loan which the court in such action or proceeding determines is without merit (in respect of a defense) or unwarranted (in respect of a request for judicial intervention or injunctive or other equitable relief).  "Related Party" shall mean any person or entity which owns a direct or indirect interest in Borrower or Indemnitor, or which is owned or controlled by or under common ownership or control with Borrower or Indemitor.

    This is a guaranty of payment and performance and not of collection. The liability of Indemnitor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person (including, without limitation, other guarantors, if any), nor against the collateral for the Loan. Indemnitor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any collateral for the Loan or to any balance of any deposit account or credit on the books of Holder in favor of Borrower or any other person. In the event, on account of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, Borrower shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, Indemnitor shall nevertheless be fully liable therefor. In the event of a default under the Loan Documents which is not cured within any applicable grace or cure period, Holder shall have the right to enforce its rights, powers and remedies (including, without limitation, foreclosure of all or any portion of the collateral for the Loan) thereunder or hereunder, in any order, and all rights, powers and remedies available to Holder in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity. If the indebtedness and obligations guaranteed hereby are partially paid or discharged by reason of the exercise of any of the remedies available to Holder, this Agreement shall nevertheless remain in full force and effect, and Indemnitor shall remain liable for all remaining indebtedness and obligations guaranteed hereby, even though any rights which Indemnitor may have against Borrower may be destroyed or diminished by the exercise of any such remedy.

2. **Indemnification Procedures.**

(a) If any action shall be brought against Holder based upon any of the matters for which Holder is indemnified hereunder, Holder shall notify Indemnitor in writing thereof and Indemnitor shall promptly assume the defense thereof, including, without limitation, the employment of counsel acceptable to Holder and the negotiation of any settlement; provided, however, that any failure of Holder to notify Indemnitor of such matter shall not impair or reduce the obligations of Indemnitor hereunder. Holder shall have the right, at the expense of Indemnitor (which expense shall be included in Costs), to participate in the defense of any such action and, if Holder reasonably believes that its interests are not aligned with the interests of Indemnitor, to employ separate counsel in any such action to participate in the defense thereof. In the event Indemnitor shall fail to discharge or undertake to defend Holder against any claim, loss or liability for which Holder is indemnified hereunder, Holder may, at its sole option and election, defend or settle such claim, loss or liability. The liability of Indemnitor to Holder hereunder shall be conclusively established by such settlement, provided such settlement is made in good faith, the amount of such liability to include both the settlement consideration and the costs and expenses, including, without limitation, attorneys' fees and disbursements, incurred by Holder in effecting such settlement. In such event, such settlement consideration, costs and expenses shall be included in Costs and Indemnitor shall pay the same as hereinafter provided. Holder's good faith in any such settlement shall be conclusively established if the settlement is made on the advice of independent legal counsel for Holder.

(b) Indemnitor shall not, without the prior written consent of Holder: (i) settle or compromise any action, suit, proceeding or claim or consent to the entry of any judgment that does not include as an unconditional term thereof the delivery by the claimant or plaintiff to Holder of a full and complete written release of Holder (in form, scope and substance satisfactory to Holder in its sole discretion) from all liability in respect of such action, suit, proceeding or claim and a dismissal with prejudice of such action, suit, proceeding or claim; or (ii) settle or compromise any action, suit, proceeding or claim in any manner that may adversely affect Holder or obligate Holder to pay any sum or perform any obligation as determined by Holder in its sole discretion.

(c) All Costs shall be immediately reimbursable to Holder when and as incurred and, in the event of any litigation, claim or other proceeding, without any requirement of waiting for the ultimate outcome of such litigation, claim or other proceeding, and Indemnitor shall pay to Holder any and all Costs within ten (10) days after written notice from Holder itemizing the amounts thereof incurred to the date of such notice. In addition to any other remedy available for the failure of Indemnitor to periodically pay such Costs, such Costs, if not paid within said ten-day period, shall bear interest at the Default Interest Rate (as defined in the Note).

3. **Reinstatement of Obligations.** If at any time all or any part of any payment made by Indemnitor or received by Holder from Indemnitor under or with respect to this Agreement is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of Indemnitor or Borrower), then the obligations of Indemnitor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by

Indemnitor, or receipt of payment by Holder, and the obligations of Indemnitor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Indemnitor had never been made.

4.  **Waivers by Indemnitor.** To the extent permitted by law, Indemnitor hereby waives and agrees not to assert or take advantage of:

(a) Any right to require Holder to proceed against Borrower or any other person or to proceed against or exhaust any security held by Holder at any time or to pursue any other remedy in Holder's power or under any other agreement before proceeding against Indemnitor hereunder;

(b) The defense of the statute of limitations in any action hereunder;

(c) Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Holder to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons;

(d) Demand, presentment for payment, notice of nonpayment, intent to accelerate, acceleration, protest, notice of protest and all other notices of any kind, or the lack of any thereof, including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Borrower, Holder, any endorser or creditor of Borrower or of Indemnitor or on the part of any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by Holder;

(e) Any defense based upon an election of remedies by Holder;

(f) Any right or claim or right to cause a marshalling of the assets of Indemnitor;

(g) Any principle or provision of law, statutory or otherwise, which is or might be in conflict with the terms and provisions of this Agreement;

(h) Any duty on the part of Holder to disclose to Indemnitor any facts Holder may now or hereafter know about Borrower or the Property, regardless of whether Holder has reason to believe that any such facts materially increase the risk beyond that which Indemnitor intends to assume or has reason to believe that such facts are unknown to Indemnitor or has a reasonable opportunity to communicate such facts to Indemnitor, it being understood and agreed that Indemnitor is fully responsible for being and keeping informed of the financial condition of Borrower, of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Indemnitor hereunder;

(i) Any lack of notice of disposition or of manner of disposition of any collateral for the Loan;

(j) Any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents;

(k) Any lack of commercial reasonableness in dealing with the collateral for the Loan;

(l) Any deficiencies in the collateral for the Loan or any deficiency in the ability of Holder to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed;

(m) Any assertion or claim that the automatic stay provided by 11 U.S.C. '362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Holder to enforce any of its rights, whether now or hereafter required, which Holder may have against Indemnitor or the collateral for the Loan;

(n) Any modifications of the Loan Documents or any obligation of Borrower relating to the Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise;

(o) Any action, occurrence, event or matter consented to by Indemnitor under Section 5(h) hereof, under any other provision hereof, or otherwise; and

(p) The rights and defenses being waived by Indemnitor hereunder include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure. Without limiting the generality of the foregoing or any other provision hereof, Indemnitor further expressly waives to the extent permitted by law any and all rights and defenses, including, without limitation, any rights of subrogation, reimbursement, indemnification and contribution, which might otherwise be available to Indemnitor under California Civil Code Sections 2787 to 2855, inclusive, 2899 and 3433, or under California Code of Civil Procedure Sections 580a, 580b, 580d and 726, or any of such sections. Indemnitor hereby waives any rights or defenses available to Indemnitor based upon Section 2822 of the California Civil Code. Indemnitor agrees that the performance of any act or any payment which tolls any statute of limitations applicable to the Note or any of the other Loan Documents shall similarly operate to toll the statute of limitations applicable to Indemnitor's liability hereunder.

5. **Representation and Warranty**. Indemnitor hereby represents, warrants and covenants that Indemnitor's net worth is, and at all times while this Agreement shall be in effect shall be, not less than $7,200,000.00. Indemnitor further agrees to promptly give Holder written notice if at any time, from time to time, while the Loan is outstanding, Indemnitor's net worth materially decreases.

LA_10639614_4
October 31, 2002 (2:09PM)

6

6. **General Provisions.**

(a) <u>Fully Recourse</u>. All of the terms and provisions of this Agreement are recourse obligations of Indemnitor and not restricted by any limitation on personal liability.

(b) <u>Unsecured Obligations</u>. Indemnitor hereby acknowledges that Holder's appraisal of the Property is such that Holder is not willing to accept the consequences of the inclusion of Indemnitor's indemnity set forth herein among the obligations secured by the Security Instrument and the other Loan Documents and that Holder would not make the Loan but for the unsecured personal liability undertaken by Indemnitor herein.

(c) <u>Survival</u>. This Agreement shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the exercise of any remedy by Holder under the Security Instrument or any of the other Loan Documents, including, without limitation, any foreclosure or deed in lieu thereof, even if, as a part of such remedy, the Loan is paid or satisfied in full.

(d) <u>No Subrogation; No Recourse Against Holder</u>. Notwithstanding the satisfaction by Indemnitor of any liability hereunder, Indemnitor shall not have any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of Borrower or to any collateral for the Loan. In connection with the foregoing, Indemnitor expressly waives any and all rights of subrogation to Holder against Borrower, and Indemnitor hereby waives any rights to enforce any remedy which Holder may have against Borrower and any right to participate in any collateral for the Loan. In addition to and without in any way limiting the foregoing, Indemnitor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to Indemnitor to all indebtedness of Borrower to Holder, and agrees with Holder that Indemnitor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Indemnitor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the collateral from the Loan. Further, Indemnitor shall not have any right of recourse against Holder by reason of any action Holder may take or omit to take under the provisions of this Agreement or under the provisions of any of the Loan Documents.

(e) <u>Reservation of Rights</u>. Nothing contained in this Agreement shall prevent or in any way diminish or interfere with any rights or remedies, including, without limitation, the right to contribution, which Holder may have against Borrower, Indemnitor or any other party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at Title 42 U.S.C. '9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

(f) <u>Financial Statements; Net Worth</u>. Indemnitor hereby agrees, as a material inducement to Holder to make the Loan to Borrower, to furnish to Holder annually, and from time to time upon request of Holder, current and dated financial statements detailing the assets and liabilities of Indemnitor certified by Indemnitor, in form and substance acceptable to Holder. Indemnitor hereby warrants and represents unto Holder that any and all balance sheets, net worth statements and other financial data which have heretofore been given or may hereafter be given

to Holder with respect to Indemnitor did or will at the time of such delivery fairly and accurately present the financial condition of Indemnitor.

(g) <u>Rights Cumulative; Payments</u>. Holder's rights under this Agreement shall be in addition to all rights of Holder under the Note, the Security Instrument and the other Loan Documents. Further, payments made by Indemnitor, under this Agreement shall not reduce in any respect Borrower's obligations and liabilities under the Note, the Security Instrument and the Other Loan Documents.

(h) <u>No Limitation on Liability</u>. Indemnitor hereby consents and agrees that Holder may at any time and from time to time without further consent from Indemnitor do any of the following events, and the liability of Indemnitor under this Agreement shall be unconditional and absolute and shall in no way be impaired or limited by any of the following events, whether occurring with or without notice to Indemnitor or with or without consideration: (i) any extensions of time for performance required by any of the Loan Documents or extension or renewal of the Note; (ii) any sale, assignment or foreclosure of the Note, the Security Instrument or any of the other Loan Documents or any sale or transfer of the Property; (iii) any change in the composition of Borrower, including, without limitation, the withdrawal or removal of Indemnitor from any current or future position of ownership, management or control of Borrower; (iv) the accuracy or inaccuracy of the representations and warranties made by Indemnitor herein or by Borrower in any of the Loan Documents; (v) the release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Holder's voluntary act or otherwise; (vi) the release or substitution in whole or in part of any security for the Loan; (vii) Holder's failure to record the Security Instrument or to file any financing statement (or Holder's improper recording or filing thereof) or to otherwise perfect, protect, secure or insure any lien or security interest given as security for the Loan; (viii) the modification of the terms of any one or more of the Loan Documents; or (ix) the taking or failure to take any action of any type whatsoever. No such action which Holder shall take or fail to take in connection with the Loan Documents or any collateral for the Loan, nor any course of dealing with Borrower or any other person, shall limit, impair or release Indemnitor's obligations hereunder, affect this Agreement in any way or afford Indemnitor any recourse against Holder. Nothing contained in this Section shall be construed to require Holder to take or refrain from taking any action referred to herein.

(i) <u>Entire Agreement; Amendment; Severability</u>. This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements, whether written or oral, between the parties respecting such matters. Any amendments or modifications hereto, in order to be effective, shall be in writing and executed by the parties hereto. A determination that any provision of this Agreement is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Agreement to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

(j) <u>Governing Law; Binding Effect; Waiver of Acceptance</u>. This Agreement shall be governed by and construed in accordance with the laws of the State in which the

LA_10639614_4
October 31, 2002 (2:09PM)

8

Property is located, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling. This Agreement shall bind Indemnitor and the heirs, personal representatives, successors and assigns of Indemnitor and shall inure to the benefit of Holder and the officers, directors, shareholders, agents and employees of Holder and their respective heirs, successors and assigns. Notwithstanding the foregoing, Indemnitor shall not assign any of its rights or obligations under this Agreement without the prior written consent of Holder, which consent may be withheld by Holder in its sole discretion. Indemnitor hereby waives any acceptance of this Agreement by Holder, and this Agreement shall immediately be binding upon Indemnitor.

(k) *Notices*. All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be in writing and shall be deemed to have been validly given or served by delivery of the same in person to the intended addressee, or by depositing the same with Federal Express or another reputable private courier service for next business day delivery to the intended addressee at its address set forth on the first page of this Agreement or at such other address as may be designated by such party as herein provided, or by depositing the same in the United States mail, postage prepaid, registered or certified mail, return receipt requested, addressed to the intended addressee at its address set forth on the first page of this Agreement or at such other address as may be designated by such party as herein provided. All notices, demands and requests to be sent to Holder shall be addressed to the attention of the Capital Markets Group. All notices, demands and requests shall be effective upon such personal delivery, or one (1) business day after being deposited with the private courier service, or two (2) business days after being deposited in the United States mail as required above. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given as herein required shall be deemed to be receipt of the notice, demand or request sent. By giving to the other party hereto at least fifteen (15) days' prior written notice thereof in accordance with the provisions hereof, the parties hereto shall have the right from time to time to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

(l) *No Waiver; Time of Essence; Business Day*. The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder. Any waiver of such right or remedy must be in writing and signed by the party to be bound. This Agreement is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof. The term "business day" as used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in San Francisco, California are authorized by law to be closed.

(m) *Captions for Convenience*. The captions and headings of the sections and paragraphs of this Agreement are for convenience of reference only and shall not be construed in interpreting the provisions hereof.

(n) *Attorneys' Fees*. In the event it is necessary for Holder to retain the services of an attorney or any other consultants in order to enforce this Agreement, or any portion thereof, Indemnitor agrees to pay to Holder any and all costs and expenses, including,

LA_10639614_4                                9
October 31, 2002 (2:09PM)

without limitation, attorneys' fees, incurred by Holder as a result thereof and such costs, fees and expenses shall be included in Costs.

(o) <u>Successive Actions</u>. A separate right of action hereunder shall arise each time Holder acquires knowledge of any matter indemnified or guaranteed by Indemnitor under this Agreement. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

(p) <u>Joint and Several Liability</u>. Notwithstanding anything to the contrary contained herein, the representations, warranties, covenants and agreements made by Indemnitor herein, and the liability of Indemnitor hereunder, is joint and several if Indemnitor is comprised of more than one person or entity.

(q) <u>Reliance</u>. Holder would not make the Loan to Borrower without this Agreement. Accordingly, Indemnitor intentionally and unconditionally enters into the covenants and agreements as set forth above and understands that, in reliance upon and in consideration of such covenants and agreements, the Loan shall be made and, as part and parcel thereof, specific monetary and other obligations have been, are being and shall be entered into which would not be made or entered into but for such reliance.

(r) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

(s) SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL

(1) INDEMNITOR, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE IN WHICH THE PROPERTY IS LOCATED OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS AGREEMENT, (B) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION OVER THE COUNTY, IN WHICH THE PROPERTY IS LOCATED, (C) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (D) TO THE FULLEST EXTENT PERMITTED BY LAW, INDEMNITOR AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF HOLDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). INDEMNITOR FURTHER

CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE INDEMNITOR AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 5(k) HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(2) HOLDER AND INDEMNITOR, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVE, RELINQUISH AND FOREVER FORGO THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT OR ANY CONDUCT, ACT OR OMISSION OF HOLDER OR INDEMNITOR, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH HOLDER OR INDEMNITOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

(t) *Waiver by Indemnitor*. Indemnitor covenants and agrees that, upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower, Indemnitor shall not seek or cause Borrower or any other person or entity to seek a supplemental stay or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. '105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law, (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Holder to enforce any rights of Holder against Indemnitor or the collateral for the Loan by virtue of this Agreement or otherwise.

(u) *No Petition*. Indemnitor hereby covenants and agrees that it will not at any time institute against Borrower, or join in any institution against Borrower of, any bankruptcy proceedings under any United States Federal or state bankruptcy or similar law.

(v) *Secondary Market*. Holder may sell, transfer and deliver the Loan Documents to one or more investors in the secondary mortgage market. In connection with such sale, Holder may retain or assign responsibility for servicing the Loan or may delegate some or all of such responsibility and/or obligations to a servicer, including, but not limited to, any subservicer or master servicer, on behalf of the investors. All references to Holder herein shall refer to and include, without limitation, any such servicer, to the extent applicable.

(w) *Decisions*. Wherever pursuant to this Agreement (i) Holder exercises any right given to it to approve or disapprove, (ii) any arrangement or term is to be satisfactory or acceptable to Holder, or (iii) any other decision or determination is to be made by Holder, the

LA_10639614_4
October 31, 2002 (2:09PM)

11

decision of Holder to approve or disapprove or to accept or not accept, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Holder, shall be in the sole and absolute discretion of Holder and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

    (x)    <u>Costs</u>.  Wherever pursuant to this Agreement it is provided that Indemnitor shall pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable legal fees and disbursements of Holder.

    (y)    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, all of which taken together constitute one and the same instrument.  Facsimile signatures hereto are valid as if manually signed.

[signature page follows]

IN WITNESS WHEREOF, Indemnitor has executed this Indemnity Agreement as of the day and year first above written.

_____
James I. Hunter

_____
Gijsbert Van Maren

_____
John Mackay

STATE OF CALIFORNIA )
) ss.
COUNTY OF Alameda )

On November 1st, 2002, before me, Linda McAloon Judge, Notary Public (here insert name and title of officer), personally appeared James I. Hunter, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

[Seal]

_____
Notary Public



November 1, 2002 (1:53PM)

EXHIBIT A

Legal Description

The land referred to herein is situated in the City of Oakland, County of Alameda, State of California and is described as follows:

COMMENCING AT A POINT ON THE SOUTHERN LINE OF SEVENTEENTH STREET; DISTANT THEREON 100 FEET WESTERLY FROM THE WESTERLY LINE OF TELEGRAPH AVENUE; AND RUNNING THENCE WESTERLY ALONG SAID SOUTHERLY LINE OF SEVENTEENTH STREET, 100 FEET; THENCE AT RIGHT ANGLES SOUTHERLY, 105 FEET; THENCE AT RIGHT ANGLES EASTERLY, 100 FEET; AND THENCE AT RIGHT ANGLES NORTHERLY, 105 FEET TO THE POINT OF COMMENCEMENT.

BEING LOTS 9, 11, 13 AND 15, BLOCK "B", MAP OF A SURVEY MADE FOR G. C. POTTER, MARCH 28, FILED APRIL 23, 1877, MAP BOOK 2, PAGE 14, ALAMEDA COUNTY RECORDS.

Assessor's Parcel No. 008-0620-019

IN WITNESS WHEREOF, Indemnitor has executed this Indemnity Agreement as of the day and year first above written.

_____
James I. Hunter

_____
Gijsbert Van Maren

_____
John Mackay

~~STATE~~ PROVINCE OF BRITISH COLUMBIA )
                                      ) ss.
COUNTY OF _____ )

On _November 4_, 2002, before me, _Edward Kaye_ (here insert name and title of officer), personally appeared _Gijsbert Van Maren_, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

[Seal]

_____
Notary Public

EDWARD KAYE
SLIMAN, STANDER & COMPANY
BARRISTERS AND SOLICITORS
#201 - 45793 LUCKAKUCK WAY
CHILLIWACK, BC  V2R 5P9
TELEPHONE: (604) 824-7777
SOLICITOR

IN WITNESS WHEREOF, Indemnitor has executed this Indemnity Agreement as of the day and year first above written.

_____
James I. Hunter

_____
Gijsbert Van Maren

_____
John Mackay

CITY OF VANCOUVER            )
PROVINCE OF BRITISH COLUMBIA )   ss.
COUNTRY OF CANADA            )

  On November 1, 2002, before me, John Gregory, personally appeared John D.L. Mackay, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

  Witness my hand and official seal.

[Seal]

_____
Notary Public

J.N. GREGORY
Barrister & Solicitor
P.O. BOX 49123
TWENTY-SEVENTH FLOOR
THREE BENTALL CENTRE
595 BURRARD
VANCOUVER, B.C.  V7X 1J2